# A

COMMONWEALTH OF MASSACHUSETTS

HAMPDEN COUNTY, ss.                                      SUPERIOR COURT
                                                   DOCKET NO. 2179CV00494

HAMPDEN COUNTY
SUPERIOR COURT
FILED
NOV 16 2021
[signature]
CLERK OF COURTS

THE FAMILY FREEDOM ENDEAVOR, INC. & others[1]

vs.

JEFFREY C. RILEY, as COMMISSIONER OF THE MASSACHUSETTS
DEPARTMENT OF ELEMENTARY AND SECONDARY EDUCATION, & another[2]

*AND CONSOLIDATED CASES*[3]

**MEMORANDUM OF DECISION AND ORDER ON
PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION**

**I. Introduction**

This controversy arises out of health and safety measures imposed during the ongoing COVID-19 pandemic to reopen Massachusetts public K-12 schools for in-person learning. The plaintiffs in these six consolidated actions are nonprofit entities and parents of school children who challenge the authority of the Department of Elementary and Secondary Education (DESE), the Board of Elementary and Secondary Education (BESE), eighteen public school districts, and two municipalities, Cambridge and Dover, to issue and implement mask mandates for school children. The plaintiffs argue, *inter alia*, that the defendants lacked authority to issue and

---

[1] The People's Freedom Endeavor, by its individual representatives Justin McCarthy, Matthew Hall, Alecia DePesa, Joseph Boccelli, and Daniel Ashley-Silva.

[2] the Massachusetts Board of Elementary and Secondary Education.

[3] The cases consolidated with this lead case are: *Children's Health Rights of Massachusetts v. DESE, Andover Pub. Sch. Dist., Attleboro Pub. Sch. Dist., Easton Pub. Sch. Dist., and Sandwich Pub. Sch. Dist.*, 2173CV00672; *Children's Health Rights of Massachusetts v. DESE, Cambridge Pub. Sch. Dist., City of Cambridge, Franklin Pub. Sch. Dist., Northborough Pub. Sch. Dist., Southborough Pub. Sch. Dist., Northborough-Southborough Reg. Pub. Sch. Dist., and Tyngsborough Pub. Sch. Dist.*, 2182CV00874; *Citizens for Medical Freedom, Inc. v. DESE, Dover Pub. Sch. Dist., Sherborn Pub. Sch. Dist., Dover-Sherborn Regional Sch. Dist., and the Town of Dover*, 2182CV00878, *Children's Health Rights of Massachusetts v. DESE, Bridgewater-Raynham Regional Sch. Dist., Carver Pub. Sch. Dist., Hingham Pub. Sch. Dist., and West Bridgewater Pub. Sch. Dist.*, 2183CV00766, and *Carlino, et als. v. DESE and Tewksbury Pub. Sch. Dist.*, 2181CV02076.

implement the mask mandates, that the mandates violate parents' constitutional rights to make decisions regarding their children's health, and that mask wearing is ineffective and harms children. The plaintiffs seek declaratory judgment and injunctive relief enjoining the defendants from enforcing and extending the mandates. These cases are before me on the plaintiffs' motions for a preliminary injunction. After a hearing and consideration of the parties' submissions, I *deny* the motions for preliminary injunction.

**II. The Mask Mandates**

On March 10, 2020, pursuant to the Civil Defense Act, Governor Charlie Baker declared a state of emergency in Massachusetts due to the spread of COVID-19. On March 15, 2020, Baker issued an order suspending in-person instruction at all elementary and secondary schools in Massachusetts. On May 28, 2021, Baker terminated the state of emergency but declared a public health emergency under G. L. c. 17, § 2A.

The Centers for Disease Control (CDC) has reported that over 720,000 persons in the United States have died from COVID-19. The Massachusetts Department of Public Health (DPH) has reported that over 18,000 people in Massachusetts had died of COVID-19 as of October 2021. The trajectory of the pandemic has been unpredictable. More transmissible variants of COVID-19 have been linked to surges in hospitalizations and deaths, and at the same time vaccinations which reduce the risk of serious illness from COVID-19 have been distributed to many persons, now even children.

In May of 2021, COVID-19 cases, hospitalizations and deaths fell as vaccination rates increased. DESE then announced that for the fall of 2021, all districts and schools would have to provide in-person, full-time learning and that all DESE health and safety requirements would be lifted. (Johnston Aff. par. 19). Over the course of the summer of 2021, however, the Delta

variant of COVID-19 arrived in Massachusetts and the number of COVID-19 cases began rising again. In July 2021, the seven-day COVID-19 case average in Massachusetts was 223, but by August 18, that figure had climbed to 1,237.

In August of 2021, BESE met to discuss the changed circumstances and the awareness that remote learning had harmed many school children. State and local education authorities considered ways to resume in-person learning but with health requirements which would allow students and staff to return to schools safely. Both the CDC and the DPH have recommended mask wearing and other measures to reduce the risk of COVID-19 transmission. The American Academy of Pediatrics supports mask wearing in schools for children who are two years and older. See also *Derosiers v. Governor*, 486 Mass. 369, 372 (2020) ("Medical experts have identified ways in which the spread of the virus can be curtailed, which include wearing a cloth face mask, social distancing, quarantining when infected or exposed to the virus, hand washing, and cleaning frequently touched surfaces").

On August 24, 2021, BESE voted to authorize the Commissioner of DESE to issue a statewide mask mandate for all public school children aged five and up, along with faculty and staff, with exceptions. The same day, BESE voted to declare "exigent circumstances" pursuant to 603 Code Mass. Regs. § 27.08, which provides in relevant part:

> "(1) [U]pon a determination by [BESE] that exigent circumstances exist that adversely affect the ability of students to attend classes in a safe environment unless additional health and safety measures are put in place, the Commissioner, in consultation with medical experts and state health officials, shall issue health and safety requirements and related guidance for districts.
> . . . .
> "(7) The authorities granted in 603 Code Mass. Regs. § 27.08 shall remain in effect until [BESE] determines that students can attend classes in a safe environment without additional health and safety measures."

The mandate authorized by BESE and DESE (also referred to as the State defendants)

exempts students and staff who are unable to wear a mask for medical or behavioral reasons and permits the removal of masks for eating, drinking, outdoor time, taking mask breaks, and indoors during elective classes such as while playing wind instruments. Pursuant to the mandate,

> "[s]tudents and staff who cannot wear a mask for medical reasons and students who cannot wear a mask for behavioral reasons are exempted from the requirement. Face shields may be an option for students with medical or behavioral needs who are unable to wear masks or face coverings. Transparent masks may be the best option for both teachers and students in classes for deaf and hard of hearing students."

DESE directed school districts to enforce the mandate and to provide disciplinary procedures for noncompliance, but cautioned that

> "[w]hether and when a student should be disciplined for failure to wear a mask is a local decision, guided by the district's student discipline policy and the particular facts. . . . [S]ome students with disabilities may need additional supports to wear masks and may need to be accommodated. Districts are encouraged to consider and implement alternatives before resorting to disciplinary exclusion. Keeping students connected with school is especially important this year as students return to school after a challenging school year."

DESE has instructed that schools which achieved a vaccination rate above 80% by October 1, 2021, could disregard the mandate for students and staff who are vaccinated.

The mandate, by its terms, "is an exercise of [BESE's] authority to ensure students attend classes in a safe environment" and "to set policies relative to children's education, including ensuring that students receive the required amount of structured learning time through in-person education" pursuant to, *inter alia*, G. L. c. 69, §§ 1B, 1G; and 603 Code Mass. Regs. § 27.08.

The State defendants extended the mandate on September 27th and on October 26th, with the latter extension in effect until at least January 15, 2022. DESE explained in the mandate that the mask requirement "remains an important measure to keep students safe in school at this time," that it extended the mask requirement after consulting with medical experts and state

health officials, and that it would continue to work with those entities "to evaluate the mask requirement beyond January 15."

Among the defendants in these actions are eighteen public school districts which have implemented this mandate and two municipalities which have separately issued mask mandates. The record discloses that such local decisions to impose or comply with the mandates have been based upon guidance from public health authorities and other professionals.[4]

### III. Alleged Harms from Mask Mandates

In support of their claim that the mask mandates harm children, the plaintiffs submit an affidavit (entitled a declaration, but signed under the pains and penalties of perjury on September 23, 2021) of Andrew Bostom, M.D., who has a master's degree in epidemiology. He is an associate professor at Brown University's School of Medicine.

Bostom opines that prolonged mask wearing by K-12 school children causes significant and irreparable harm physically and psychologically. According to Bostom, prolonged mask wearing causes headaches, visual disturbances, drowsiness, dizziness, reduced concentration, orofacial skin irritation, acne, and provokes an increase in stress hormones, which, in turn, negatively impacts the immune response. He adds that chronic mask wearing can potentially cause a significant increase in socio-psychological stress and mental harm that can escalate into

---

[4] For example, Scott Kmief, the Superintendent of Schools for the Carver Public Schools, states in his affidavit that Carver, in following DESE's mask mandate, is acting in accordance with guidance from the CDC, the DPH, and the Town of Carver's Board of Health.
    In Cambridge, the Chief Operating Officer of the Cambridge School Department explained that the school mask mandate was considered by its COVID-19 Safety, Health & Facilities Working Group, which is comprised of scientists, doctors, educators, and families appointed by the school superintendent. That group recommended that masks be required for the first semester of this academic year and cited among its reasons that some individuals, even if fully vaccinated, were at higher risk of serious illness if exposed to COVID-19, and that the American Academy of Pediatrics recommended universal masking in schools for everyone aged two and up. The school committee voted to approve of the group's recommendation and the superintendent recommended that masks be required inside all Cambridge public school buildings for the first semester.

5

behavioral problems and be difficult to reverse. Bostom does not cite any documented cases of that potential phenomenon. He also states that there are reports of claustrophobic experiences and difficulty getting sufficient oxygen, but he adds no additional information, such as the number of negative reports or whether any were substantiated. He does not specify the ages of the persons who reportedly experienced the negative effects of mask wearing, nor state how long the masks were used or the types of masks used. Bostom does not explain whether exemptions and accommodations were available nor does he state that these increased risks occur in school age children where there are provisions for breaks from mask wearing, exemptions from the mandate for medical and behavioral reasons, and accommodations. Bostom does not attempt to balance the risk of potential harms from masking against the risk of harms from COVID-19 infection or from remote learning.

      The plaintiffs have also submitted affidavits from John Diggs, M.D., a physician who has treated hundreds of COVID-19 patients, and Tammy Blakeslee, an industrial hygienist. Diggs emphasizes that children are far less likely than older persons to require hospitalization or to die from COVID-19. Diggs states that there is no evidence that masking decreases the rates of hospitalizations and deaths from COVID-19. He sees mask wearing as causing a deterioration in dental health and in IQs. In his view, "uniform masking" should cease, respiratory pandemics tend to burn themselves out through herd immunity, and vaccinations prolong COVID-19 variants and drive variants.

      Blakeslee devotes much of her affidavit to the different degrees of protection from N95 masks and other types of masks. She views typical cloth masks as unhelpful in protecting against infectious diseases and creating more health risks. She reasons that face coverings can be a breeding ground for bacteria and, by keeping germs within the mask, they place the wearer at

greater risk of becoming sick. Both Diggs and Blakeslee conclude that the masks are ineffective and do more harm than good to school children.

**IV. Legal Analysis**

When a private party seeks a preliminary injunction, the moving party is required to show that an irreparable injury would occur without immediate injunctive relief. *LeClair* v. *Town of Norwell*, 430 Mass. 328, 331 (1999). In ruling upon a motion for a preliminary injunction, the court first

> "evaluates in combination the moving party's claim of injury and chances of success on the merits. If the judge is convinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party. What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the merits. Only where the balance between those risks cuts in favor of the moving party may a preliminary injunction properly issue."

*Packaging Industries Group, Inc.* v. *Cheney*, 380 Mass. 609, 617 (1980).

**A. Statutory and Regulatory Grounds for the State Defendants' Mask Mandate**

General Laws c. 69, § 1B, generally provides that BESE "shall establish policies relative to the education of students in public early childhood, elementary, secondary, and vocational-technical schools." Other provisions of § 1B address specific aspects of education, including but not limited to curricula, teachers' qualifications, standards for under-performing schools, personnel evaluation guidelines, and equitable distribution of financial resources. The plaintiffs highlight one provision in particular as evidence that the State defendants only can impose school health related restrictions if the school buildings pose health risks. The provision of § 1B they highlight states that BESE

> "shall establish minimum standards for all public early childhood, elementary, secondary and vocational-technical school buildings, subject to the provisions of the state building

7

code. The board shall establish standards to ensure that every student shall attend classes in a safe environment."

Section 1B further states that BESE

"shall establish such other policies as it deems necessary to fulfill the purposes of this chapter and chapters [15, 70, 71A, 71B, and 74]. In accordance with the provisions of [c. 30A, BESE] may promulgate regulations as necessary to fulfill said purposes. Said regulations shall be promulgated so as to encourage innovation, flexibility, and accountability in schools and school districts."

G. L. c. 69, § 1B.

The plaintiffs primarily argue that the State defendants lacked authority to issue and implement their mask mandate because the Legislature did not expressly grant them such authority. The plaintiffs narrowly interpret § 1B as authorizing BESE to impose health related restrictions only when school buildings pose health risks, due to the provision in § 1B that BESE "shall establish minimum standards for all public . . . school buildings, subject to the provisions of the state building code." The plaintiffs simply ignore the rest of the statute which unambiguously evinces a legislative intent that the State defendants ensure that students attend classes in a healthy and safe educational environment, which environment cannot be reasonably read to be limited to the condition of the buildings. The statute's intended applicability to any health risks, not just those posed by school building conditions, is common sense. It is also clear from the broad language of § 1B which requires BESE to establish policies relative to school children's education and to "establish such other policies as it deems necessary to fulfill the purposes of this chapter and chapters [15, 70, 71A, 71B, and 74] . . . so as to encourage innovation, flexibility, and accountability in schools and school districts." The plaintiffs have not demonstrated that the State defendants lacked authority under this statute during an unprecedented pandemic to establish policies to ensure safe in-person learning in public schools.

8

The directive of § 1B that BESE establish policies relative to school children's education authorized the promulgation and use of 603 Code Mass. Regs. § 27.08. "An agency's powers to promulgate regulations are 'shaped by its organic statute taken as a whole and need not necessarily be traced to specific words.'" M*assachusetts Federation of Teachers, AFT, AFL-CIO* v. *Bd. of Educ.*, 436 Mass. 763, 773 (2002), quoting *Purity Supreme, Inc.* v. *Atty. Gen.*, 380 Mass. 762, 770 (1980). See *Grocery Manufacturers of Amer., Inc.* v. *Dept. of Pub. Health*, 379 Mass. 70, 75 (1979) (regulation may be authorized even where it cannot be traced to specific statutory language).

Upon BESE's determination under § 27.08 that "exigent circumstances exist that adversely affect the ability of students to attend classes in a safe environment unless additional health and safety measures are put in place," the Commissioner, in consultation with medical experts and state health officials, was required to "issue health and safety requirements and related guidance for districts." That is exactly what occurred here. The plaintiffs have not shown that the State defendants lacked authority to issue and implement their mask mandate pursuant to G. L. c. 69, § 1B, and 603 Code Mass. Regs. § 27.08.[5] The plaintiffs are unlikely to succeed on the merits of their core claim challenging the legality of the State defendants' mask mandate.

**B. The Exigent Circumstances Determination**

The plaintiffs maintain that even if the State defendants had authority under G. L. c. 69, § 1B, and 603 Code Mass. Regs. § 27.08, they nonetheless exceeded their authority because there

---

[5] The plaintiffs filed a Notice of Supplemental Authority citing a decision recently issued by a Pennsylvania court in *Corman* v. *Acting Sec'y of Health*, No. 294 M.D. 2021 (Nov. 10, 2021) (slip op.). In that case, parents as well as private schools and some public school districts challenged the validity of an order by a state agency requiring masks in all schools. The court ruled that the order was invalid because (1) it was not issued in compliance with mandatory rule making procedures, and (2) the health regulation relied upon for the order only authorized actions where the persons affected were known to have or been exposed to persons with communicable diseases, which was not the case in the schools. *Corman* does not aid the plaintiffs in these consolidated actions. The regulation relied upon here, 603 Code Mass. Regs. § 27.08, was properly promulgated and the State defendants' application of it did not exceed their authority as explained above.

were and are no exigent circumstances concerning COVID-19 in Massachusetts, let alone concerning children, to justify invoking § 27.08. This argument merits no more than cursory attention. The governor declared a public health emergency. The Delta variant-related surge in COVID-19 infections in Massachusetts prompted school officials to reevaluate how to provide safe in-person learning. The State defendants relied upon the guidance of medical experts and public health authorities in crafting the mask requirements with exemptions, after taking into account the many concerns in this fluid and perilous situation. Nothing in the record suggests that such reliance was unreasonable or that the State defendants' determination of exigent circumstances lacked a substantial basis or relation to the protection of public health. See *Derosiers*, 486 Mass. at 385-386.

On the other hand, the plaintiffs' blanket denial of exigent circumstances and of the need for masks in schools contradicts the guidance issued by the CDC, the DPH, and the American Academy of Pediatrics. On these facts, this court will not second guess the State defendants' determination that exigent circumstances existed to invoke § 27.08. See *Kain v. Dept. of Envir. Protection*, 474 Mass. 278, 293 (2016) (where board balanced public policy concerns, it was not for court to second guess board's course of action). The plaintiffs have not established that the State defendants exceeded their authority in determining that exigent circumstances existed to impose the mask mandate.

**C. Municipal Mask Mandates**

Some of the plaintiffs further contend that the public school districts and two municipalities which are defendants in these actions lacked authority to issue and impose their mask mandates because the Legislature did not authorize them to do so.[6] For this argument, they

---

[6] The Family Freedom Endeavor, Inc. argues that any school mask mandates should only be issued by local school districts rather than the State defendants and that local school boards should be free to do what they deem

misplace reliance upon *Del Duca v. Town Administrator of Methuen*, 368 Mass. 1, 10 (1975), for the proposition that municipalities' authorities are limited to powers expressly stated in governing statutes. *Del Duca* does not aid the plaintiffs, but only clarifies that the Home Rule Amendment and the Home Rule Procedures Act permit municipalities to exercise any power conferred upon them by the Legislature so long as their exercise of that power is not inconsistent with the Constitution or a general law enacted pursuant to the Legislature's retained powers. *Id.* Whether the mask mandate is preempted by DPH's regulatory scheme or conflicts with parents' constitutional rights, as alleged by the plaintiffs, is addressed below.

### D. Whether Mask Mandates are Preempted by DPH Regulatory Scheme

The plaintiffs maintain that the defendants cannot mandate or implement mask wearing because that subject matter is preempted by the DPH.[7] The plaintiffs see the DPH's statutory and regulatory scheme concerning infectious diseases as so comprehensive that it compels the conclusion that it preempts all actions by other public entities with respect to infectious diseases. Specifically, the plaintiffs argue that because the DPH regulates this field and has not imposed a mask mandate through the Commissioner of Public Health's order dated May 28, 2021, the defendants' mask mandates exceed their authority.

---

appropriate. Other plaintiffs, including Children's Health Rights of Massachusetts, Citizens for Medical Freedom, Inc., and individual parents, take the contrary position that even local authorities lack power to impose mask mandates, and that parents rather than governmental entities should determine whether their children wear masks in order to attend school in person.

[7] Some of the plaintiffs also complain that two municipalities, Cambridge and Dover, have issued mask mandates without authority. Defense counsel for one of the municipalities argued in the motion hearing that the plaintiffs lack standing on these claims because the municipalities' mandates are not applicable to schools and the plaintiffs have not alleged that they have been impacted by those mask orders. The plaintiffs responded by stating that Dover's ordinance does not exempt, and therefore applies, to its schools, and thus confers standing upon the plaintiffs. This debate does not change the focus of this litigation and the motions for a preliminary injunction with respect to the mask mandate in public schools.

11

The plaintiffs rely upon *LeClair* v. *Town of Norwell*, 430 Mass. at 337 n.11, which reads in part: "A municipal regulation will be invalidated only (1) if there is an express legislative intent that there be no municipal regulation, or (2) the local regulation would so frustrate the state statute as to warrant the conclusion that preemption was intended." A legislative intent to preempt a local regulation cannot be inferred absent a conflict between the State statute and a municipal regulation. Cf. *id.*

The plaintiffs' preemption argument fails. They have not pointed to any conflict between the DPH's order, which did not bar mask mandates, and the mandates here. Instead, the mandates were guided by the DPH, other public health authorities, and medical experts. Nor is there any evidence of an express legislative intent that municipalities not impose health related rules in their own schools.

**E. Constitutional Claims**

The plaintiffs also challenge the mask mandates on constitutional grounds, claiming that they infringe upon parents' constitutional right to make fundamental decisions about their children's care, upbringing and education, and therefore that this court must review the challenge under a standard of strict scrutiny. See *Langone* v. *Sec'y of the Commonwealth*, 388 Mass. 185, 196 (1983) ("Strict scrutiny is required if the interests asserted by the plaintiffs are fundamental and the infringement of them is substantial"). From that basis, the plaintiffs argue that there is no compelling government interest in the mask mandates because COVID-19 poses no risk to children, and that masks are not effective but rather harm children.

Strict scrutiny is an inappropriate standard of review here because the plaintiffs have not demonstrated that they have a fundamental interest in not having their children masked at school or that their interest has been substantially impaired. The parents who are plaintiffs in these

actions do not have limitless authority in the school context.[8] Their right to direct the care of their children is circumscribed when it jeopardizes the health or safety of children or has a "potential for significant social burdens." See *Matter of McCauley*, 409 Mass. 134, 137 (1991). Parental rights do not include the liberty to expose the community or a child to communicable diseases. See *Prince* v. *Massachusetts*, 321 U.S. 158, 166-167 (1944).

Public school entities, at the State level, as explained above, and at the local level, have ample and well-established power to impose measures to protect the general welfare and best interests of their students. See, e.g., *Jacobson* v. *Comm. of Massachusetts*, 197 U.S. 11, 26-39 (1905) (rejecting claim that smallpox vaccination requirement was unconstitutional); *Nicholls* v. *Mayor and Sch. Comm'ee of Lynn*, 297 Mass. 65, 67 (1937) (school committee has power to enforce rules to promote health); *Doe* v. *Superintendent of Sch. of Worc.*, 421 Mass. 117, 131 (1995) (school officials' duty is to provide environment in which all children can learn). See also G. L. c. 76, § 15 (requiring vaccinations for students to attend schools). Therefore, the parent plaintiffs have not shown that they have a fundamental constitutional interest in not having their children be subject to the mask mandate.

Where, as here, the defendants' broad authority has not been exceeded, the court in considering a constitutional attack on the mandates assesses whether the challenged actions bear a real or substantial relation to the protection of the public health. See *Derosiers*, 486 Mass. at 386. The record compels the conclusion that the mask mandates in Massachusetts public schools bear a substantial relation to the protection of public health. At the State and local levels, the

---

[8] For their argument that the mask mandates violate their constitutional rights as parents, the plaintiffs rely upon one ruling in Arkansas, in *Sitton* v. *Bentonville Schools*, Case No. 4CV-21-2181 (Ark. Cir. Ct. Oct. 12, 2021). The *Sitton* decision is not authoritative and is undercut by the reasoning of a plethora of decisions from other jurisdictions. Those decisions are cited by the defendants and need not be repeated here. They are persuasive and overwhelmingly support the conclusion that no such fundamental right exists.

mandates were created, tailored, and implemented in consultation with medical experts and on the basis of widely accepted public health recommendations. They serve the legitimate State interest of slowing the spread of COVID-19. Accordingly, the mandates easily withstand rational basis review. See *id.* at 390 (upholding regulations under rational basis review because they "as a whole were informed by public health recommendations and serve the State interest of slowing the spread of COVID-19, which is a legitimate State interest").

The plaintiffs' arguments are premised upon nonauthoritative cases as well as thin and heavily contradicted evidence. Bostom's affidavit does not assess health risks under the mask mandates at issue, with exemptions, breaks, and variations depending on students' ages and the types of masks. The affidavits of Diggs and Blakeslee only confirm that not everyone agrees on whether the benefits of school mask mandates outweigh the risk of harm they may pose. The plaintiffs have not submitted any significant support for their claim that the mask mandates issued by the defendants harm school children's health, much less that COVID-19 poses no real risk to children or that masks are ineffective in reducing the risk of COVID-19 transmission.

### F. Conclusion

The plaintiffs have not met their burden of demonstrating that they are likely to succeed on the merits of their claims or that they have or will suffer irreparable harm if they are not granted the injunctive relief they seek. Absent any factors weighing in their favor on this record, the plaintiffs' motions for a preliminary injunction must be denied. See *Packaging Industries Group, Inc.* v. *Cheney*, 380 Mass. at 617.

## **ORDER**

For all the foregoing reasons, it is hereby **ORDERED** that the Plaintiffs' Motions for a Preliminary Injunction are **DENIED**.

_____
David M. Hodge
Justice of the Superior Court

Dated: November 16, 2021