UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| MICHAEL BUSH; LINDA TAYLOR; | ) |
| LISA TIERNAN; KATE HENDERSON; | ) |
| ROBERT EGRI; KATALIN EGRI; | ) |
| ANITA LOPEZ; MONICA GRANFIELD; | ) |
| ANN LINSEY HURLEY; IAN SAMPSON; | ) |
| SUSAN PROVENZANO; and JOSEPH PROVENZANO, | ) |
| *pro se* Plaintiffs, | ) |
| | ) |
| VS. | ) C.A. NO. 1:21-cv-11794-ADB |
| | ) |
| LINDA FANTASIA; MARTHA FEENEY-PATTEN; | ) |
| ANTHONY MARIANO; CATHERINE GALLIGAN; | ) |
| JEAN JASAITIS BARRY; PATRICK COLLINS; | ) |
| DAVID ERICKSON; TIMOTHY GODDARD; and | ) |
| TOWN OF CARLISLE, | ) |
| Defendants. | ) |

_____

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANTS TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

This is an action brought by twelve *pro se* plaintiffs against the Town of Carlisle and eight Town of Carlisle officials. The suit arises out of a face mask mandate adopted by the Carlisle Board of Health ("BOH") on August 26, 2021, in response to "the recent increase in positive COVID-19 cases in Carlisle and throughout Middlesex County, including break-through cases among those who have been fully vaccinated …." (Plaintiffs' Complaint, Exhibit 5). The mandate requires face masks be worn in "all indoor public spaces, or private spaces open to the public within the Town of Carlisle …." (Id.) Excluded from the mandate are those individuals who are "unable to wear a face mask due to a medical condition or disability …." (Id.) Claiming the mask mandate violates their constitutional rights, statutory rights and human rights (id., Sec. IV, at 15), plaintiffs now bring this action for compensatory damages, punitive damages and injunctive relief. (Id., Sec. V, at 16-17).

Plaintiffs name nine defendants in their Complaint: (1) the Town of Carlisle; (2) Health Agent, Linda Fantasia; (3) Director of the Gleason Public Library, Martha Feeney-Patten; (4) BOH Chair, Anthony Mariano; (5) BOH Member, Jean Jesaitis Barry; (6) Town Administrator, Timothy Goddard; (7) BOH Member, Catherine Galligan; (8) BOH Member, David Erickson; and (9) BOH Member, Patrick Collins. The individual defendants are sued in both their individual and official capacities. Plaintiffs' Complaint sounds in ten Counts (id., Sec. II, at 6-7):

| COUNT | THEORY |
|-------|--------|
| I | Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131, *et seq.* |
| II | Equal Protection Clause of 14th Amendment, 42 U.S.C. § 1983 |
| III | General Requirements for Informed Consent, 20 CFR § 50.20 |
| IV | Civil Rights Act of 1964, 42 U.S.C. § 2000a |
| V | Deprivation of Rights Under Color of Law, 42 U.S.C. § 242 |
| VI | Statements or Entries Generally, 18 U.S.C. § 1001 |
| VII | Food, Drug & Cosmetic Act, 21 U.S.C. § 360bbb-3 |
| VIII | Article 6 of United Nations' Universal Declaration on Bioethics and Human Rights |
| IX | Discrimination in Places of Public Accommodation, M.G.L. c. 272, § 98 |
| X | Publication or Display of Discriminatory Notice or Sign, M.G.L. c. 272, § 92A |

Plaintiffs' Complaint fails to state claims upon which relief can be granted and, therefore, must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Carlisle BOH had the authority under Massachusetts law to issue the mask mandate. More to the point, seven of plaintiffs' legal theories (Counts III & V-X) provide no civil remedies whatsoever, and the remaining claims under the ADA (Count I), the Equal Protection Clause of the Fourteenth Amendment (Count II) and the Civil Rights Act of 1964 (Count IV), are subject to dismissal on the multiple grounds set forth below. This Memorandum of Law is submitted in support of defendants' Motion to Dismiss.

## I. INTRODUCTION

COVID-19 is an infectious respiratory disease caused by a coronavirus discovered in 2019. The disease is highly contagious and can lead to severe illness and death. On March 10, 2020,

Governor Charlie Baker declared a state of emergency in the Commonwealth of Massachusetts to deal with the growing COVID-19 pandemic pursuant to his authority under the Civil Defense Act, Mass. Stat. 1950, c. 639.[1]  On May 1, 2020, Governor Baker issued COVID-19 Order No. 31 which required face masks to be worn in all public settings where social distancing was not possible.  On November 2, 2020, in response to rising case counts and hospitalizations, Governor Baker issued COVID-19 Order No. 55 which required face masks to be worn at all times in all public locations, whether indoors or outdoors.  Six months later, due to the widespread availability of vaccines and "positive trends in the public health data," Governor Baker issued COVID-19 Order No. 67 (dated April 29, 2021) which continued to require that face masks be worn in indoor public locations, but relaxed the mandate for outdoor public locations unless social distancing was not possible.

On May 28, 2021, Governor Baker terminated the state of emergency and rescinded many prior COVID-19 Orders (including Order No. 67), but expressly declared that an emergency "detrimental to the public health" continues to exist.  M.G.L. c. 17, § 2A.  This declaration empowered the Commissioner of the Department of Public Health ("DPH") to take such action "as he may deem necessary to assure the maintenance of public health and the prevention of disease."  Id.[2]  That same day, the DPH Commissioner issued an Order requiring face masks to be worn in certain indoor settings, including, but not limited to, health care facilities, congregate care facilities, day care facilities and correctional facilities.  In so doing, the Commissioner did not alter the authority of any agency "to make such rules or issue such guidance as it may be authorized to

---

[1] The following day, March 11, 2020, the World Health Organization characterized the COVID-19 outbreak as a pandemic.

[2]  The Governor's declaration of a state of emergency and ensuing COVID-19 Orders are available for viewing at https://www.mass.gov/info-details/covid-19-state-of-emergency (last visited January 5, 2022).

do, provided the terms are consistent with this Order and any guidance issued to implement it."[3] (Order of DPH Commissioner, dated May 28, 2021).

During the summer of 2021, COVID-19 cases in Massachusetts and throughout the country began to rise once again due to the arrival of the Delta variant. In July 2021, the seven-day COVID-19 case average in Massachusetts was 223. Family Freedom Endeavor, Inc. v. Riley, Hampden Super. Ct., C.A. No. 2179CV00494, at 2-3 (Nov. 16, 2021).[4] On July 27, 2021, citing disturbing developments and newly emerging data regarding the spread of the Delta variant, the Centers for Disease Control and Prevention ("CDC") recommended that those in areas of substantial or high transmission wear masks in public indoor places, even if they are fully vaccinated.[5] By August 18, 2021, the seven-day COVID-19 case average in Massachusetts rose to 1,237. Id.

On August 26, 2021, the Carlisle BOH adopted a mask mandate requiring face masks to be worn in "all indoor public spaces, or private spaces open to the public within the Town of Carlisle …" pursuant to its authority under M.G.L. c. 111, §§ 31 & 104.[6] (Plaintiffs' Complaint,

---

3  The Commissioner reissued this Order on June 14, 2021, together with guidance for wearing face masks in certain settings.

4  For the Court's convenience, a true and accurate copy of the Family Freedom decision is attached to defendants' Motion to Dismiss as Exhibit "A."

5  See  https://www.cdc.gov/mmwr/volumes/70/wr/mm7030e2.htm?s_cid=mm7030e2_x  (last visited January 5, 2022).

6 The Carlisle BOH adopted its mask mandate only six days after the Boston Public Health Commission adopted a similar mandate within the City of Boston. See BPHC Order Requiring Face Coverings in the City of Boston, dated August 20, 2021. Like the Carlisle mandate, the Boston mandate applies to all persons in indoor places "open to members of the public." As of December 30, 2021, 69 Massachusetts municipalities have adopted mask mandates similar to Carlisle's in an effort to slow the spread of the COVID-19 disease, including the cities of Cambridge, Chelsea, Lowell, Lynn, Peabody, Somerville and Worcester. See https://boston.cbslocal.com/2021/12/30/face-mask-mandates-massachusetts-towns-cities-covid-omicron/ (last visited January 5, 2022).

Exhibit 5).[7]  The BOH subsequently renewed the mandate at public meetings held on October 6, 2021, November 17, 2021, and December 15, 2021.  By the time of its last renewal, the number of deaths in America due to COVID-19 had "topped 800,000 and healthcare systems across the nation have reached the breaking point."  In Re: MCP No. 15, 2021 WL 5989357, at *11 (6th Cir. Dec. 17, 2021) (reinstating OSHA vaccine mandate for businesses with 100 or more employees citing "pervasive danger that COVID-19 poses to workers ….")  On December 21, 2021, DPH issued its updated Winter Advisory Regarding Face Coverings, in which it advised "all residents, regardless of vaccination status, [to] wear a mask or face covering when indoors (and not in your own home.)"[8,9]

## II.  STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a pleading.  To survive a Rule 12(b)(6) motion, a plaintiff must "provide the 'grounds' of his 'entitle[ment] to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (court should ignore statements "that simply offer legal labels and conclusions or merely rehash cause-of-action elements").  In other words, a

---

7  At an open meeting held on August 31, 2021, the Carlisle Select Board voted unanimously to support the BOH mask mandate. See minutes of meeting at https://www.carlislema.gov/AgendaCenter/ViewFile/Minutes/_08312021-3247  (last visited January 5, 2022).

8  See  https://www.mass.gov/info-details/covid-19-mask-requirements (last visited January 5, 2022).

9 According to the DPH COVID-19 Interactive Data Dashboard, the number of confirmed cases of COVID-19 in Massachusetts as of January 3, 2022 is 1,107,768, and the number of confirmed deaths in Massachusetts is 19,954.  See  https://www.mass.gov/info-details/covid-19-response-reporting (last visited January 5, 2022).

plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." <u>Alston v. Spiegel</u>, 988 F.3d 564, 571 (1st Cir. 2021) (quoting <u>Twombly</u>, 550 U.S. at 555). A mere "possibility of misconduct" is not enough. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). See <u>Hamann v. Carpenter</u>, 937 F.3d 86, 90 (1st Cir. 2019) (conclusory allegations of ill will and spite held insufficient to cross plausibility threshold); <u>Hartigan v. Macy's, Inc.</u>, 501 F. Supp. 3d 1, 4 (D. Mass. 2020) (conclusory allegation that defendant failed to comply with own privacy policy held insufficient to meet plausibility standard).

In 2007, the Supreme Court restated the well-known standard that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007). Two years later, the Supreme Court clarified <u>Twombly</u> by stating that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft</u>, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will ... be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u>, 556 U.S. at 679. See <u>Garcia-Catalan v. United States</u>, 734 F.3d 100, 103 (1st Cir. 2013).

### III. ARGUMENT

### A.   <u>The Carlisle BOH had Authority to Issue a Mask Mandate.</u>

In mandating the wearing of face masks in "all indoor public spaces, or private spaces open to the public …," the Carlisle BOH acted pursuant to its statutory authority under M.G.L. c. 111, §§ 31 & 104. Section 31 expressly authorizes local boards of health to make "reasonable health regulations." It further states:

> If the board of health determines that an emergency exists, the board or its authorized agent, acting in accordance with section 30 of chapter 111, may, without notice of hearing, issue

an order reciting the existence of the emergency and requiring that such action be taken as the board of health deems necessary to address the emergency.

M.G.L. c. 111, § 31.[10] That is what the Carlisle BOH did here, *only it actually held a hearing*. Following the guidance of Governor Baker, the DPH and the CDC, the BOH determined that a health emergency existed, then duly acted upon that emergency by issuing an appropriate order. See also M.G.L. c. 111, § 122 ("The board of health shall examine into all … causes of sickness within its town … which may, in its opinion, be injurious to the public health, shall destroy, remove or prevent the same as the case may require, and shall make regulations for the public health and safety relative thereto …."). M.G.L. c. 111, § 104 adds: "If a disease dangerous to the public health exists in a town, the selectmen and the board of health shall use all possible care to prevent the spread of the infection …."[11] M.G.L. c. 111, § 104. This legislative directive is both mandatory and broad – the board of health *shall* use *all possible care.* In adopting the mask mandate, the Carlisle BOH simply performed its official duties and responsibilities.

Abundant case law supports the actions of the BOH. In Train v. Boston Disinfecting Co., 144 Mass. 523, 527 (1887), the SJC upheld the authority of the Boston Board of Health to order disinfection of plaintiff's property at plaintiff's own expense. "Quarantine laws are a familiar exercise of the police power of the state. Their enactment is within its lawful province, and the making of regulations for their enforcement has always been entrusted to subordinate boards." Id. In Compagnie Francaise de Navigation a Vapeur v. State Board of Health, LA, 186 U.S. 380, 387 (1902), the United States Supreme Court held that state health and quarantine laws do not violate

---

10 In the event of a public health emergency, a board of health is entitled to dispense with ordinary procedures and to take such action as it "deems necessary to meet the emergency." 310 CMR § 11.05(1).

11 In their Complaint, plaintiffs omit this portion of the statute, claiming it only gives the BOH authority to "give public notice" of "infected places." (Plaintiffs' Complaint, Sec. II(D), at 9). Section 104 is not so limited.

the U.S. Constitution, even if they affect foreign and domestic commerce. Until Congress acts, states have police power "to enact and enforce quarantine laws for the safety and the protection of the health of their inhabitants …." Three years later, in <u>Jacobson v. Comm. of Mass.</u>, 197 U.S. 11, 27-28 (1905), the Supreme Court held that a City of Cambridge compulsory vaccination ordinance (against smallpox) was not unconstitutional. "Upon the principle of self-defense, of paramount necessity, a community has the right to protect itself against an epidemic of disease which threatens the safety of its members." <u>Id.</u>

More recently, state and federal courts have repeatedly upheld both vaccination and mask requirements in the face of COVID-19. In actions filed in six Massachusetts Superior Courts on September 20, 2021, Children's Health Rights of Massachusetts (a non-profit organization of volunteer parents) and others challenged the statewide mask mandate adopted for school children by the Commissioner of the Massachusetts Department of Elementary and Secondary Education ("DESE"), as well as local mask mandates adopted by eighteen public school districts and two municipalities (Cambridge and Dover). After consolidating the cases, Hampden Superior Court Judge David Hodge denied plaintiffs' Motion for a Preliminary Injunction (seeking to enjoin enforcement of the mandates) on the grounds that plaintiffs failed to demonstrate a substantial likelihood of success on the merits or that they would suffer irreparable harm if such injunctive relief was denied. <u>Family Freedom</u>, <u>supra</u>.

In reaching his decision, Judge Hodge ruled that DESE has the authority to issue a mask mandate under M.G.L. c. 69, § 1B (which evinces a legislative intent that DESE shall ensure students attend classes in a healthy and safe educational environment). Further, school districts and municipalities "have ample and well-established power to impose measures to protect the general welfare and best interests of their students." <u>Family Freedom</u>, at *13. In support of this

conclusion, Judge Hodge cited <u>Jacobson v. Comm. of Mass</u>. (among other cases), as well as

M.G.L. c. 76, § 15, which requires vaccinations for students to attend schools.  In rejecting

plaintiffs' argument that the mask mandates violate parents' constitutional rights to make decisions

regarding their children's health, Judge Hodge wrote:

> The record compels the conclusion that the mask mandates in Massachusetts public schools
> bear a substantial relation to the protection of public health.  At the State and local levels,
> the mandates were created, tailored, and implemented in consultation with medical experts
> and on the basis of widely accepted public health recommendations.  They serve the
> legitimate State interest of slowing the spread of COVID-19.  Accordingly, the mandates
> easily withstand rational basis review.

<u>Family Freedom</u>, at *13.

Admittedly, the mask mandate issued by the Carlisle BOH applies to more than only

schoolchildren.  Still, Judge Hodge's rationale, together with the fact that two of the local mandates

challenged in <u>Family Freedom</u> applied community-wide (Cambridge and Dover) and not only in

schools, support the conclusion that the mask mandate adopted by the Carlisle BOH withstands

any challenge that it was issued without legal authority.   Numerous other recent cases are

consistent with the <u>Family Freedom</u> ruling.  See <u>Desrosiers v. Governor</u>, 486 Mass. 369, 392

(2020) (upholding emergency orders issued by Governor Baker to address health risks of COVID-

19 pandemic, including mandating face masks when social distancing not possible); <u>Southwell v.

McKee</u>, Providence Super. Ct. (R.I.), C.A. No. PC-2021-05915 (Nov. 12, 2021) (denying motion

for preliminary injunction to enjoin enforcement of state's school mask mandate); <u>Harris v. Univ.

of Mass., Lowell</u>, 2021 WL 3848012, **5-7 (D. Mass. Aug. 27, 2021) (denying motion for

preliminary injunction to enjoin school requirement that students must be fully vaccinated against

COVID-19 before returning to campus); <u>Together Employees v. Mass. Gen'l Brigham, Inc.</u>, 2021

WL 5234394, at *9 (D. Mass. Nov. 10, 2021) (denying motion for preliminary injunction to enjoin

enforcement of employer's mandatory COVID-19 vaccination policy); *on appeal*, 19 F.4th 1, 8

(1st Cir. Nov. 18. 2021) (denying motion for preliminary injunction pending appeal); Stepien v. Murphy, 2021 WL 5822987, at *13 (D. N.J. Dec. 7, 2021) (denying motion for preliminary injunction to enjoin mask mandate in public schools); W.S. by Sonderman v. Ragsdale, 2021 WL 2024687, at *3 (N.D. Ga. May 12, 2021) (same). The Carlisle BOH acted within its authority.[12]

## B. **Count I of Plaintiffs' Complaint Fails to State a Claim for Relief Under the ADA**.

The ADA prohibits public entities from discriminating against any qualified individual with a disability "by reason of such disability . . .." 42 U.S.C. § 12132. To recover under Title II of the ADA (the section applicable to government entities), a plaintiff must allege that (1) he is a qualified individual with a disability; (2) he was either excluded from participation in, or denied the benefits of, a public entity's "services, programs or activities," or was otherwise discriminated against; and (3) such exclusion, denial of benefits or discrimination was because of his disability. Parker v. Universidad de Puerto Rico, 225 F.3d 1, 4 (1st Cir. 2000); Buchanan v. Maine, 469 F.3d

---

[12] Plaintiffs also challenge a mask mandate adopted by the Gleason Public Library Board of Trustees while COVID-19 Order No. 55 (issued by Governor Baker on November 2, 2020 and requiring face masks to be worn at all times in all public locations, whether indoors or outdoors) was still in effect. Governor Baker admittedly rescinded Order No. 55 on May 28, 2021, three months before the Carlisle BOH adopted its mask mandate on August 26, 2021. Yet, in so doing, Governor Baker confirmed that public health orders issued by the DPH were neither withdrawn nor rescinded, and remained in full force and effect. See COVID-19 Order No. 69 (May 28, 2021). He also declared that the public health emergency presented by COVID-19 continued to exist. In the face of this emergency, and supported by guidance from the CDC and DPH, the Trustees of Gleason Library allowed the mask mandate to remain in effect at the library for the next three months (as the Delta variant began spreading) until it was effectively ratified by the Carlisle BOH on August 26, 2021. Even if the Trustees did not have the same authority as the BOH, plaintiffs' Constitutional and statutory claims (as set forth below) remain subject to dismissal. Moreover, only one plaintiff, Monica Granfield, alleges she was instructed by a member of the library staff to wear a mask. (Plaintiffs' Complaint, Sec. III(C), ¶ 18). This directive allegedly occurred on October 20, 2021, two months *after* the BOH adopted its mask mandate. Because no plaintiff asserts he or she was barred from the library for failing to wear a mask during the three-month period from May 28, 2021 to August 26, 2021, plaintiffs lack standing to challenge the Gleason Library mask mandate.

158, 170-71 (1st Cir. 2006); <u>Mitchell v. Massachusetts Dep't of Correction</u>, 190 F. Supp. 2d 204, 211 (D. Mass. 2002).  The term "qualified individual with a disability" is defined as:

> [A]n individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2).

Plaintiffs' ADA claim (Count I) is subject to dismissal on five grounds.  First, plaintiffs fail to allege sufficient facts to show they are "disabled."  A disability is "a physical or mental impairment that substantially limits one or major life activities."  42 U.S.C. § 12102(1)(A).  <u>Carroll v. Xerox Corp.</u>, 294 F.3d 231, 238 (1st Cir. 2002).  Without applying the three-prong test ordinarily used to determine disability, defendants merely note that none of the plaintiffs alleges he or she is actually "disabled."  Plaintiff Michael Bush alleges only that "face masks are medically inappropriate for him to wear" (Complaint, Sec. III(C), ¶ 4), but identifies no physical or mental impairment that substantially limits one or more of his major life activities.  The other eleven plaintiffs make no allegations of impairment whatsoever.  Such omissions are fatal to establishing the first element of an ADA claim.

Second, a disabled individual is not otherwise "qualified" if he poses "a significant risk to the health or safety of others by virtue of the disability that cannot be eliminated by reasonable accommodations."  <u>Doe v. Univ. of Md. Med. Syst. Corp.</u>, 50 F.3d 1261, 1265 (4th Cir. 1995).  See <u>Together Employees</u>, 2021 WL 5234394, at *7 (plaintiffs who pose "direct threat" to health or safety of others in workplace are not "qualified individuals").  The failure to wear face masks in indoor public places during the COVID-19 pandemic poses a significant risk to the health or

safety of other visitors. Therefore, even if plaintiffs are disabled (which defendants deny), they are not "qualified" individuals with disabilities within the meaning of 42 U.S.C. § 12131(2).

Third, in denying plaintiffs access to indoor public spaces unless they wear face masks, the BOH is not discriminating against plaintiffs *because of* their disability. All mask-less visitors are treated alike; no visitors can enter indoor public spaces unless they don a mask. Those with and without disabilities are treated equally.

Fourth, the remedy in Title II of the ADA is available only as against "public entities." 42 U.S.C. § 12132. A "public entity" is defined as any state or local government, or agency or department thereof. 42 U.S.C. § 12131(1). There is no individual liability under Title II of the ADA. Wiesman v. Hill, 629 F. Supp. 2d 106, 111 (D. Mass. 2009); Miller v. King, 384 F.3d 1248, 1277 (11th Cir. 2004). Thus, Count I must be dismissed as against the eight individual defendants,

Fifth, the Carlisle BOH mask mandate contains a carveout – by its express terms, the mandate does not apply to those individuals who are "unable to wear a face mask due to a medical condition or disability …." (Plaintiffs' Complaint, Exhibit 5). This exception rescues the mask mandate from any ADA challenge by reasonably accommodating those who are truly disabled. Count I must be dismissed.

**C.      Count II of Plaintiffs' Complaint Fails to State a Claim for Relief Under the Equal Protection Clause of the Fourteenth Amendment.**

To prevail under 42 U.S.C. § 1983 for the violation of their right to equal protection, plaintiffs must show that defendants treated them differently from similarly situated persons and that such disparate treatment "either burdens a fundamental right, targets a suspect class, or has no rational basis." Center for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 379 (6th Cir. 2011) (citation omitted). The so-called "right" to enter an indoor public space without wearing a mask is by no means a "fundamental" one. Nor are those who prefer to remain mask-less

considered a "suspect class." Thus, the Town's mask mandate – which permits entry to those who wear masks, but bars entry to those who do not – must be upheld so long as it survives rational basis review. W.S. by Sonderman, 2021 WL 2024687, at *3 (rational basis test held proper standard of review for mask mandate). The Carlisle BOH mask mandate easily survives such review.

At the outset, government action analyzed under the rational basis standard "is accorded a strong presumption of validity." Heller v. Doe by Doe, 509 U.S. 312, 319 (1993). Moreover, a classification for disparate treatment (*e.g.*, mask vs. no mask) "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993). Faced with the COVID-19 pandemic and armed with guidance from the CDC and DPH advising that the wearing of masks (particularly indoors) helps to prevent the spread of a deadly infectious disease, the Carlisle BOH clearly had a rational basis for adopting a mask mandate. *See* Stepien, 2021 WL 5822987, at *8 (school mask mandate held rationally related to goal of slowing spread of COVID-19).[13] Defendants' interest in protecting the public health provides more than a rational basis for the mandate. "Although a government cannot use a health crisis as a pretext for trampling constitutional rights, the Supreme Court has long recognized that 'a community has the right to protect itself against an epidemic of disease which threatens the safety of its members.'" Delaney v. Baker, 511 F. Supp. 3d 55, 74 (D. Mass. 2021) (quoting Calvary Church of Bangor v. Mills, 459 F. Supp. 3d 273, 284 (D. Me. 2020)) (upholding Governor Baker's indoor mask

---

13 Indeed, adoption of a mask mandate would pass the compelling interest test as well. "Few interests are more compelling than protecting public health against a deadly virus." Does 1-6 v. Mills, 16 F.4th 20, 32 (1st Cir. 2021). See Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S.Ct. 63, 67 (2020) ("Stemming the spread of COVID-19 is unquestionably a compelling interest.")

mandate set forth in COVID-19 Order No. 55).  The Carlisle BOH has a right to protect the members of its community.  Count II must be dismissed.

### 1.    *The Individual Defendants are Entitled to Qualified Immunity.*

To determine whether a government official enjoys qualified immunity, a court must decide "whether a reasonable official [in the defendant's position] could have believed his actions were lawful in light of clearly established law."  Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91 (1st Cir. 1994).  The doctrine of qualified immunity "requires a constitutional right to be clearly established so that public officials are on notice that this conduct is in violation of that right."  Frazier v. Bailey, 957 F.2d 920, 930 (1st. Cir. 1992).  The focus is not on the merits of the underlying claim but, instead, on the objective legal reasonableness of the official's conduct as measured by reference to clearly established law and the information the official possessed at the time of the allegedly unlawful conduct.  Lowinger v. Broderick, 50 F.3d 61, 65 (1st Cir. 1995); Febus-Rodriguez, 14 F.3d at 91.  The qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Lowinger, 50 F.3d at 65; Hunter v. Bryant, 502 U.S. 224, 229 (1991).  See Savard v. Rhode Island, 338 F.3d 23, 28 (1st Cir. 2003) ("The bottom line is that the qualified immunity defense prevails unless the unlawfulness of the challenged conduct is 'apparent.'")  The framework for analyzing qualified immunity consists of three inquiries: "(i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable [official], situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right."  Limone v. Condon, 372 F.3d 39, 44 (1st Cir. 2004).

As set forth above, plaintiffs' allegations, even if true, do not establish viable equal protection claims under the Fourteenth Amendment. But even if they do, plaintiffs' right (if any) to enter indoor public spaces in Carlisle without wearing a mask was not clearly-established at the time of defendants' actions. By adopting a mask mandate in the face of a deadly worldwide pandemic, no reasonable official in the position of the BOH would have understood that she was violating plaintiffs' constitutional rights. <u>Mullenix v. Luna</u>, 136 S.Ct. 305, 308 (2015) ("A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right'") (quoting <u>Reichle v. Howards</u>, 566 U.S. 658, 132 S.Ct. 2088, 2093 (2012)). "The dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." <u>Mullenix</u>, 136 S.Ct. at 308 (internal citations and quotations omitted) (emphasis in original). The individual Carlisle defendants are entitled to qualified immunity under the circumstances alleged in plaintiffs' Complaint. Therefore, Count II of plaintiffs' Complaint must be dismissed as against him.

**D.** **Count IV of Plaintiffs' Complaint Fails to State a Claim for Relief Under the Civil Rights Act of 1964.**

Adopted in response to the civil rights movement of the early 1960s, Title II of the Civil Rights Act of 1964 provides in part as follows:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation … without discrimination or segregation on the ground of *race, color, religion, or national origin*.

42 U.S.C. § 2000a (emphasis added). In short, the statute is directed solely at discrimination on the basis of race, color, religion or national origin. It does not prohibit discrimination in places of public accommodation on any other grounds. See <u>Burnette v. Bredesen</u>, 566 F. Supp. 2d 738, 745

(E.D. Tenn. 2008) (smokers held not a "race" for purposes of public accommodations statute); Rose v. Springfield-Greene Count Health Dep't, 2008 WL 11337266, at *2 (W.D. Mo. Dec. 5, 2008) (Section 2000a held inapplicable to claims of disability discrimination); Lyons v. Port Norfolk Yacht Club, Inc., 1989 WL 8817, at *4 (D. Mass. Jan. 25, 1989) (Section 2000a "by its own terms applies only to racial discrimination and does not prohibit discrimination based on sex or physical impairments"); DeCrow v. Hotel Syracuse Corp., 268 F. Supp. 530, 532 (N.D.N.Y. 1968) (Section 2000a held inapplicable to claims of gender discrimination).

Plaintiffs make no allegations that defendants discriminated against them on the basis of their race, color, religion or national origin. Therefore, Count IV must be dismissed.

**E.** **Counts III & V-X of Plaintiffs' Complaint Fail to State Claims for Relief.**

Plaintiffs remaining seven Counts seek relief under a federal regulation, several state and federal statutes, and a United Nations Declaration. None of these provisions contains a private right of action for civil relief. Specifically:

- Count III – The Food & Drug Administration prohibits the use of human subjects in research without the subject's "legally effective informed consent." 20 CFR § 50.20.

- Count V – 42 U.S.C. § 242 makes it a federal crime to willfully and under color of state law deprive a person of rights protected under the United States Constitution or federal laws.

- Count VI – 18 U.S.C. § 1001 makes it a federal crime to make false statements to federal investigators.

- Count VII – The Food, Drug & Cosmetic Act authorizes the use of certain medical products during emergencies. 21 U.S.C. § 360bbb-3.

- Count VIII – Article 6 of the UNESCO Universal Declaration on Bioethics and Human Rights issued on October 19, 2005 provides that "[a]ny preventative, diagnostic and therapeutic medical intervention is only to be carried out with the prior, free and informed consent of the person concerned ...."[14]

---

14  See  https://en.unesco.org/themes/ethics-science-and-technology/bioethics-and-human-rights (last visited January 5, 2022).

- Count IX – M.G.L. c. 272, § 98 makes it a state crime to discriminate in places of public accommodation on the basis of race, color, religion, national origin, sex, gender identity, sexual orientation, disability or ancestry.

- Count X – M.G.L. c. 272, § 92A makes it a state crime to publish, distribute or display any notice or sign in a place of public accommodation intended to discriminate against any person on the basis of race, color, religion, nationality, sex, gender identity, sexual orientation or disability.

In the absence of any private right of action, Counts III & V-X must be dismissed.

**F.     Plaintiffs' Complaint Fails to State Claims for Relief Against the Defendants, Linda Fantasia and Timothy Goddard**.

In addition to the Town of Carlisle, plaintiffs name as defendants the five members of the Carlisle BOH (in both their official and individual capacities) who voted to adopt the mask mandate: Anthony Mariano (Chair); Jean Jesaitis Barry; Catherine Galligan; David Erickson; and Patrick Collins.  They also name the Director of Gleason Public Library, Martha Feeney-Patten (in both her official and individual capacities), alleging that she implemented a face mask requirement of her own at the public library.  (Plaintiffs' Complaint, Sec. II(D), at 9).  The remaining two defendants did not participate in the BOH vote and are not decisionmakers: Health Agent, Linda Fantasia; and Town Administrator, Timothy Goddard.  These two individuals merely carried out the policy of the BOH.

In their Complaint, plaintiffs allege that Ms. Fantasia had "reason to know" that a document published on the Town website "Understanding Masks to Protect Children Against COVID-19"[15] was "materially false and fraudulent."  (Plaintiffs' Complaint, Sec. II(D), at 9).  Plaintiffs further allege that Ms. Fantasia had "reason to know" that public messaging on the subject of face masks was contributing to violations of the ADA and plaintiffs' civil rights.  (Id., Sec. III(C), ¶¶ 3 & 4).

---

15     See     https://www.carlislema.gov/DocumentCenter/View/3501/Understanding-Masks-to-Protect-Children-Against-COVID-19?bidId=%C2%A0 (last visited January 5, 2022)

Plaintiffs make no allegations, however, that Ms. Fantasia published such documents or messages, nor do plaintiffs allege sufficient facts to show *how* such publications actually violated their rights to equal protection and/or under the ADA. Plaintiffs allege no facts of wrongdoing against Mr. Goddard whatsoever.

It is incumbent upon plaintiffs to support their claims as against Ms. Fantasia and Mr. Goddard with specific facts, not merely conclusions. Because of their failure to do so, plaintiffs' Complaint should be dismissed as against Ms. Fantasia and Mr. Goddard. See <u>Kadar Corp. v. Milbury</u>, 549 F.2d 230, 232 (1st Cir.1977) (dismissing defendant from case where her "status generally as an intended defendant is so nebulous as plainly to warrant dismissal").

## IV. <u>CONCLUSION</u>

For the reasons set forth above, the defendants, Linda Fantasia, Martha Feeney-Patten, Anthony Mariano, Catherine Galligan, Jean Jasaitis Barry, Patrick Collins, David Erickson, Timothy Goddard and Town of Carlisle, hereby request that this Honorable Court allow their Motion to Dismiss plaintiffs' Complaint and thereafter order said Complaint dismissed under Rule 12(b)(6) for failure to state claims upon which relief can be granted.

Respectfully submitted,

The Defendants,

LINDA FANTASIA, MARTHA FEENEY-PATTEN,
ANTHONY MARIANO, CATHERINE GALLIGAN,
JEAN JASAITIS BARRY, PATRICK COLLINS,
DAVID ERICKSON, TIMOTHY GODDARD and
TOWN OF CARLISLE,

By their Attorneys,

**PIERCE DAVIS & PERRITANO LLP**

*/s/ John J. Davis*

_____
John J. Davis, BBO #115890
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
jdavis@piercedavis.com

Dated: January 5, 2022

<u>**CERTIFICATE OF SERVICE**</u>

   I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on December 2, 2021 as follows:

Michael Bush
280 Lowell Street
Carlisle, MA 01741

Linda Taylor
879 Concord Street
Carlisle, MA 01741

Lisa Tiernan
116 Lowell Street
Westford, MA 01886

Kate Henderson
559 Lowell Street
Carlisle, MA 01741

Robert Egri
80 Wildwood Drive
Carlisle, MA 01741

Katalin Egri
80 Wildwood Drive
Carlisle, MA 01741

Anita Lopez
51 Bingham Road
Carlisle, MA 01741

Monica Granfield
110 Carlisle Pines Drive
Carlisle, MA 01741

Ann Linsey Hurley
10 Half Moon Hill
Acton, MA 01720

Ian Sampson
315 Fiske Street
Carlisle, MA 01741

Susan Provenzano
80 Mill Pond Lane
Carlisle, MA 01741

Joseph Provenzano
80 Mill Pond Lane
Carlisle, MA 01741

*/s/ John J. Davis*

_____
John J. Davis, Esq.