# UNITED STATES DISTRICT COURT

for the

District of Massachusetts

Eastern Division

| | |
|---|---|
| MICHAEL BUSH; LINDA TAYLOR; LISA TIERNAN; KATE HENDERSON; ROBERT EGRI; KATALIN EGRI; ANITA OPTIZ; MONICA GRANFIELD, ANN LINSEY HURLEY; IAN SAMPSON; SUSAN PROVENZANO; JOSEPH PROVENZANO, *Pro Se Plaintiffs* | Case No.   1:21-cv-11794-ADB |

```
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
```

MICHAEL BUSH; LINDA TAYLOR; LISA TIERNAN; KATE HENDERSON; ROBERT EGRI; KATALIN EGRI; ANITA OPTIZ; MONICA GRANFIELD, ANN LINSEY HURLEY; IAN SAMPSON; SUSAN PROVENZANO; JOSEPH PROVENZANO,
*Pro Se Plaintiffs*

VS.

LINDA FANTASIA; MARTHA FEENEY-PATTEN; ANTHONY MARIANO; CATHERINE GALLIGAN; JEAN JASAITIS BARRY; PATRICK COLLINS; DAVID ERICKSON; TIMOTHY GODDARD; TOWN OF CARLISLE; JOHN DOE; JANE DOE
*Defendants*

---

# PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION <u>TO DISMISS PLAINTIFF'S COMPLAINT UNDER RULE 12(b)(6)</u>

*Pursuant to Local Rule of Civil Procedure 7.1(b)(2)*

Plaintiffs oppose herewith the Defendants' Motion To Dismiss Plaintiffs' Complaint Under Rule 12(b)(6):

## <u>TABLE OF CONTENTS</u>

***Memorandum of Reasons*** ................................................................................................................ 3

    The Defendants' Motion is defective ........................................................................................ 3

    Much of the Motion is impertinent and immaterial ................................................................. 3

    The Defendants' Introduction is inaccurate and impertinent ................................................... 4

    Standard of review ..................................................................................................................... 5

    The Carlisle BOH did *not* have the authority to issue a mask mandate .................................. 6

        1. There was no emergency to justify the order ...................................................................... 6

        2. *Noscitur a sociis* guides and limits statutory authority ....................................................... 7

        3. Face masks are experimental medical devices with known harms ..................................... 8

        4. M.G.L. Ch. 111 §31 does not pertain to infectious disease transmitted between persons ............ 9

        5. M.G.L. Ch. 111 § 104 does not authorize orders mandating usage of personal medical devices .................. 9

        6. The Defendants have omitted this truly applicable statute ............................................... 10

        7. The *other* applicable statute ............................................................................................ 11

    The Defendants' huge footnote regarding the library's policy is inaccurate ........................... 12

    Our Complaint *does* state a claim for relief under the ADA .................................................. 14

    Our Complaint *does* state a claim for relief under the 14th Amendment ................................ 14

    The individual defendants are clearly *not* entitled to qualified immunity .............................. 16

    Our Complaint *does* state a claim for relief under the Civil Rights Act of 1964 .................... 17

    Defendants' assertions about counts III and V-X are inaccurate ............................................. 18

    Our Complaint *does* state claims for relief against Fantasia and Goddard ............................ 19

Pro Se Plaintiffs are entitled to amend to cure deficiencies ........................................................ 20

***Summary & Conclusion*** ......................................................................................................... 20

## Memorandum of Reasons

## The Defendants' Motion is defective

The Defendants' legal counsel did not meet Local R.C.P. 7.1(a)(2)'s requirement to have conferred before serving and filing this Motion. Had the Defendants' counsel conferred with the Pro Se Plaintiffs before serving this defective Motion, 1) the Plaintiffs would have assented to certain requests, and 2) several of the Defendants' assertions that are incorrect could have been corrected before being put in this defective Motion.

The Defendants' counsel waited till the afternoon of the final day by which the Defendants had to serve a responsive pleading to call undersigned Pro Se Plaintiff Michael Bush in accordance with Local Rule 7.1(a)(2). Attorney Davis left Mr. Bush a voicemail message (See Exhibit 1 enclosed). Before Mr. Bush could return Attorney Davis' call, before the end of that day, and before even the end of common business hours that day, Attorney Davis electronically filed this defective Motion with the Court. (See Exhibit 2 enclosed.)

Attorney Davis did this not at the very end of the 21-day standard period for response but on the very last day of the 51-day period the Court granted the Defendants when it allowed the Defendants' earlier Motion For Leave To Extend Time To Respond To Complaint. Hence, Attorney Davis' claim that he, "attempted to confer in good faith" does not hold water. And Local Rule 7.1(a)(2) does not allow for merely an attempt to confer, it requires that Counsels "**have conferred** and have attempted in good faith to resolve or narrow the issue." (Emphasis added.)

The Defendants and their legal counsel have neither met the requirements to serve and file this Motion nor have they made any genuine good faith effort to do so. Thus, their Motion must be summarily dismissed.

If, however, this Court concludes the Defendants have in fact met the requirements of Local Rule 7.1(a)(2), then the following sections apply.

## Much of the Motion is impertinent and immaterial

In their Motion's Memorandum of Law the Defendants have presented a good deal of assertions, references, and arguments that are irrelevant to a Motion to Dismiss under F.R.C.P. 12(b)(6), for, "A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case." *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984). And as F.R.C.P. Rule 12(f) states, "The court

may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

Therefore, as much of the matter the Defendants presented in their Memorandum of Law is immaterial and impertinent to a Motion to Dismiss under Rule 12(b)(6), the undersigned Pro Se Plaintiffs request this Court strike such matter from the Defendant's Motion.

For this Court's convenience, the following sections will correspond roughly to the separate sections of the Defendants' Memorandum of Law.

## The Defendants' Introduction is inaccurate and impertinent

In the first paragraph of their Memorandum of Law the Defendants mischaracterize this suit as arising "out of a face mask mandate adopted by the Carlisle Board of Health…" That is only partly accurate, as this suit also arises out of an unlawfully discriminatory face mask policy adopted and communicated by Defendant Martha Feeney-Patten for the Gleason Public Library a year before the Board of Health's mandate was issued. This is an important point, as public library personnel have different roles and authority than a Board of Health does in Massachusetts. Additionally, as revealed in our Complaint and its Exhibits, unlike the Board of Health's mandate, Feeney-Patten's face mask policy has been and remains considerably more unlawfully discriminatory by failing to accommodate medical exemptions.

In the Introduction section of their Memorandum of Law, the Defendants give statistics about COVID-19, mention a past state of emergency, list various orders by the MA Governor and the MA Department of Public Health, drop a reference to vaccines, and cite some state and federal court cases relating to orders and policies various entities have adopted in response to COVID-19. The Defendants presented a single Exhibit, which was a lawsuit regarding face mask policies in schools which 1) was filed in state court, not federal court, 2) involved defendants with different roles, jobs, and authority than the Defendants in this suit have, 3) cited different facts, laws and regulations than this suit does, 4) made arguments different than our suit does, and 5) was not filed pursuant to 42 U.S.C. § 1983 as this suit is. Little to none of their Memorandum of Law's Introduction's argument and exhibit is pertinent or material to this Motion to Dismiss for failure to state a claim, so we respectfully request this Court strike that matter pursuant to F.R.C.P. Rule 12(f).

Nonetheless, we would like to briefly address some aspects of the Defendants' Introduction that would be rather glaring discrepancies even if their Introduction were pertinent and material to a Motion to dismiss.

The Defendants claim that 69 Massachusetts municipalities have adopted mask mandates similar to theirs. Obviously, a Defendant does not nullify their culpability or liability by identifying instances of others' similar transgressions. And the Defendants also seem to overlook the fact that if their claim is accurate, that would mean the vast majority of the approximately 350 Massachusetts municipalities have *not* implemented face mask mandates.

The Defendants mentioned over 800,000 deaths in America due to COVID-19. Yet, according to Defendant Linda Fantasia in a December 2021 Board of Health meeting, there has only ever been one death associated with COVID-19 of a town of Carlisle resident, and that person had other contributing illness. (See highlighted portion of BOH meeting minutes enclosed as Exhibit 3.)

Finally, the "OSHA vaccine mandate" the Defendants' Introduction mentioned has since been stayed by the U.S. Supreme Court. *National Federation of Independent Business v. Department of Labor, OSHA*. 595 U. S. (2022)

## Standard of review

The undersigned Pro Se Plaintiffs agree with the Defendants' assertion that "a motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a pleading." We also agree with the Defendants' assertion that to survive a motion to dismiss, a complaint must allege facts to state a claim that are merely plausible—not facts that are certain, not facts that are probable, but facts that are merely plausible.

The Defendants cited case law about a mere "possibility of misconduct" not being enough and that "conclusory allegations of ill will and spite held insufficient to cross plausibility threshold." Yet in our Complaint and accompanying exhibits, we did not allege a mere possibility of misconduct, we asserted facts and provided evidence of the Defendants' *actual* misconduct. And we made no allegations of ill will or spite. Thus, much of the case law the Defendants cited is impertinent and immaterial.

When deciding a motion to dismiss under Rule 12(b)(6), a court must "construe all factual allegations in the light most favorable to the non-moving party to determine if there exists a plausible claim upon which relief may be granted." *Tomasella v. Nestle USA, Inc.,* 962 F.3d 60, 70 (1st Cir. 2020).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)

The Defendants provided an incomplete quote from the *Twombly* case to assert that the Plaintiffs must allege enough facts to state a claim. What they left out was the beginning of that passage, which reads, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ibid." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) Thus, though our Complaint does provide multiple detailed factual allegations, it is not required to do so to survive a Motion to dismiss. Furthermore, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

District courts should read the pleadings of a pro se plaintiff "liberally" and "interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

The Defendants quoted from the U.S. Supreme Court case *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). We as Pro Se Plaintiffs would like to note in that case the Court also stated, "A document filed pro se is 'to be liberally construed,' Estelle, 429 U.S., at 106, 97 S. Ct. 285, 50 L. Ed. 2d 251, and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,' ibid. (internal quotation marks omitted). Cf. Fed. Rule Civ. Proc. 8(f)"

## The Carlisle BOH did *not* have the authority to issue a mask mandate

The only Massachusetts statutes the Defendants claim gave the Board of Health authority to mandate that people wear face masks in the town of Carlisle are M.G.L. Ch. 111 §§ 31 and 104. We asserted in our Complaint that the Board of Health does not have such authority. According to the *Erickson v. Pardus* case law the Defendants quoted, "a judge must accept as true all of the factual allegations contained in the complaint." Yet the Defendants proceeded to argue this matter of fact that is impertinent in a Motion to dismiss. Nevertheless:

### 1. There was no emergency to justify the order

The Defendants admit in their Memorandum of Law that according to M.G.L. Ch. 111 §31, an emergency would have to exist for a Board of Health to issue an order pursuant to that statute. The Defendants have asserted that COVID-19 suddenly constituted an emergency in town when the Board of Health first voted on August 25th, 2021 to "adopt an indoor face mask mandate." (See Exhibit 5 of our Complaint for that order. For the Court's convenience it is also enclosed as <u>Exhibit 4</u> of this Opposition.) At that point in time, 1) COVID-19 had been

infecting people in MA for nearly two years, 2) it had been established the prior year that COVID-19 had an infection fatality rate of less than 1% in the general population, and 3) according to Defendant Fantasia only one death of a town of Carlisle resident has ever been associated with COVID-19.  Nevertheless, the Carlisle Board of Health declared COVID-19 an emergency in late August 2021. By that reasoning, the Board of Health could and should have: 1) declared emergencies when anyone in town contracted any infectious disease whatsoever, 2) issued orders usurping the role of all residents' and visitors' personal health care practitioners and imposing the usage of medical devices not approved by the FDA to stop the spread of those infectious diseases (e.g. face masks), and 3) sustained those declarations of emergencies and oppressive orders cumulatively and in perpetuity. What renders the Defendants' declaration of COVID-19 to be an emergency in August 2021 all the more absurd is that by that point in time it was well understood that COVID-19 could not be eradicated or contained whether by face mask usage, administration of COVID-19 "vaccines", or any other measure. Many—perhaps even most—laypeople grasped these facts by that point in time. Defendant Health Agent Fantasia and the Board of Health member Defendants certainly had an obligation to grasp such basic facts, given their chosen roles.  But just in case the Defendants did not grasp such facts about COVID-19, several of the Plaintiffs cited professor of medicine and epidemiologist Dr. Jay Bhattacharya's article published in the Wall Street Journal explaining these facts in their Notice and Demand Letter delivered to the Defendants on September 8th, 2021. We also attached that article as Exhibit 4 to our lawsuit Complaint. Yet the Board of Health Defendants have persisted in voting to renew their unlawful face mask mandate while knowing that there is no reason to expect that the single infectious disease they claim suddenly constituted an "emergency" after nearly two years will ever go away. These facts, of course, are fatal to any claims by the Defendants that COVID-19 constituted an emergency in the town of Carlisle when they declared it to be so in August 2021 and that they had legal authority to issue any orders on that basis pursuant to M.G.L. Ch. 111 § 31.

The U.S. Supreme Court this year has cautioned that courts must not allow unwarranted or prolonged declarations of emergencies. "But if this Court were to abide them only in more tranquil conditions, declarations of emergencies would never end and the liberties our Constitution's separation of powers seeks to preserve would amount to little." *National Federation of Independent Business v. Department of Labor, OSHA*. 595 U. S. (2022)

## 2. *Noscitur a sociis* guides and limits statutory authority

As explained in *Gustafson v. Alloyd Co.,* 513 U.S. 561, 115 S. Ct. 1061, 131 L. Ed. 2d 1 (1995), we rely on the principle of *noscitur a sociis*—a word is known by the company it keeps—to "avoid ascribing to one word a

meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." Id. at 575, 115 S. Ct. 1061, 131 L. Ed. 2d 1(internal quotation marks omitted). See also *United States v. Williams*, 553 U.S. 285, 294, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008) ("a word is given more precise content by the neighboring words with which it is associated"). In *Gustafson*, we interpreted the word "communication" in §2(10) of the Securities Act of 1933 to refer to a public communication, rather than any communication, because the word appeared in a list with other words, notably "notice, circular, [and] advertisement," making it "apparent that the list refer[red] to documents of wide dissemination." 513 U.S., at 575-576, 115 S. Ct. 1061, 131 L. Ed. 2d 1. And we did so even though the list began with the word "any." *Yates v. United States*, 574 U.S. 528, 543 (2015)

The Carlisle Board of Health Defendants argue that they should be allowed to take an excerpt that authorizes them to issue an order from a statute and use that excerpt to justify issuing whatever order they want regardless of the title or content of the rest of the statute. As the U.S. Supreme Court made clear in the *Yates* case above, that is not how statutory authority works.

### 3. Face masks are experimental medical devices with known harms

As we asserted in our Complaint, the Board of Health's and Gleason Public Library Director Martha Feeney-Patten's face mask orders/policies subjected members of the public to uninformed medical experimentation without disclosing known harms of face mask usage. In the exhibits accompanying our Complaint we elaborated on those points and provided the relevant legal and medical references for those facts. In exhibits 7, 8, and 9 to our Complaint we established that, "The U.S. Food and Drug Administration's (FDA) Emergency Use Authorization (EUA) for surgical and/or cloth masks requires that, 'The product is not labeled in such a manner that would misrepresent the product's intended use; for example, the labeling must not state or imply that the product is intended for antimicrobial or antiviral protection or related uses or is for use such as infection prevention or reduction.'" In those exhibits we also cited and linked to a wide-ranging review of studies which revealed a range of common adverse effects of face mask usage. According the U.S. Supreme Court in the *Erickson v. Pardus* case the Defendants quoted, the Court must accept our Complaint's and accompanying materials' asserted facts as true.

For more details this Court may review those exhibits and their cited references if it wishes. But here we will simply note that we did document for the Defendants before and with our Complaint that: 1) the FDA classifies face masks as medical devices, 2) the FDA has not approved face masks for the purposes the Defendants have mandated people wear them, and 3) there is a range of documented harms from usage of face masks. And the two

MA statutes the Defendants have cited as giving the Board of Health authority to mandate face mask usage not only make no mention of face masks, they make no mention of authorizing a Board of Health to mandate the personal usage of medical devices—much less medical devices with known harms and unapproved for the purpose the Board of Health has mandated them. These Board of Health Defendants provided no informed consent to the public with their order.

### 4. M.G.L. Ch. 111 §31 does not pertain to infectious disease transmitted between persons

The statute M.G.L. Ch. 111 §31 (enclosed as <u>Exhibit 5</u>) the Defendants claim gives the Board of Health the authority to mandate face mask usage to stop COVID-19 transmission mentions "subsurface disposal of sanitary sewage", "farmers markets", "agriculture", "sanitary codes", "poultry, livestock, or bees", "fruit, vegetables, or horticultural plants" and the "department of environmental protection". We find no mention of infectious diseases transmitted between people nor any authority to mandate personal usage of medical devices. Yet the Defendants have plucked a single sentence from that statute which mentions issuing an order, while disregarding the rest of the statute. And as noted above, the U.S. Supreme Court has stated we must "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." The U.S. Supreme Court has also cautioned, "If Congress could hand off all its legislative powers to unelected agency officials, it 'would dash the whole scheme' of our Constitution and enable intrusions into the private lives and freedoms of Americans by bare edict rather than only with the consent of their elected representatives." *Department of Transportation v. Association of American Railroads*, 575 U. S. 43, 61 (2015)  (ALITO,  J., concurring);  see  also M. McConnell, The President Who Would Not Be King 326–335  (2020);  I.  Wurman, Nondelegation at the Founding, 130 Yale L. J. 1490, 1502 (2021).

### 5. M.G.L. Ch. 111 § 104 does not authorize orders mandating usage of personal medical devices

The other statute M.G.L. Ch. 111 §104 (enclosed as <u>Exhibit 6</u>) the Defendants claim gives the Board of Health the authority to mandate face mask usage to stop COVID-19 transmission also gives no authority to mandate either face mask usage or to impose personal usage of medical devices. It is such a short, clear statute that we will simply quote it here for the Court's examination. The title of the statute "Prevention of spread of infection; public notice; removal" indicates that the statute is about posting a public notice and prohibiting removal of that public notice. The body of the statute is also simple and clear: "<u>If a disease dangerous to the public health exists in a town,</u>

the selectmen and board of health <u>shall use all possible care</u> to prevent the spread of the infection and <u>may give public notice of infected places</u> by such means as in their judgment may be most effectual for the common safety. Whoever obstructs the selectmen, board of health or its agent in using such means, or <u>whoever wilfully [sic] and without authority removes, obliterates, defaces or handles such public notices </u>which have been posted, shall forfeit not less than ten nor more than one hundred dollars." (Emphases added.)

Given the facts about COVID-19 in the town of Carlisle provided in earlier sections, the Carlisle Board of Health had reason to know that COVID-19 did not rise to the level of "a disease dangerous to public health" in the town of Carlisle. Given the Defendants contend COVID-19 did rise to that level when they issued their declaration of an emergency, we have a significant factual dispute which requires the Defendants' Motion to be dismissed.

In their Memorandum of Law the Defendants have erroneously equated the statute's phrase "shall use all possible care" with meaning "shall use all possible means". If the statute authorized a Board of Health to use all possible *means*, that could include: beheading and cremating inhabitants suspected of being infected; requiring persons accused of being infectious to wear a conspicuous sign to that effect on their front and back when outside their home; requiring all persons in town to be tested for infection several times a day or be subjected to quarantine; or to require persons to use a medical device with known harms that is not approved for the purpose of stopping the spread of infection—as these Defendants have done. But that is not what the statute authorizes a Board of Health to do. We scarcely even need apply the principle of *noscitur a sociis* to discern that this statute only authorizes a Board of Health to give public notice of infected places.

### 6. The Defendants have omitted this truly applicable statute

Why the Defendants are attempting to use Massachusetts statutes that have to do with vegetables, livestock, sewage, and placing notice on infected places to justify the Carlisle Board of Health mandating everyone use medical devices with known harms that are not approved for stopping the spread of viral infections (i.e. face masks) becomes clearer when we examine the two statutes that actually *do* empower Boards of Health to address infectious disease spread amongst persons in town.

One of these statutes, M.G.L. Ch. 111 § 95, is unsurprisingly titled "Powers and duties of boards in cases of infectious diseases" and enclosed as <u>Exhibit 7.</u> If a disease dangerous to the public health breaks out in a town, the statute authorizes a Board of Health to quarantine an infected person. It also requires the town to compensate the quarantined person for loss of their wages, not to exceed two dollars for each working day—yes, just two dollars a

day. In their Memorandum of Law, the Defendants cite case law regarding quarantines and disinfection of a person's property. Yet this single Massachusetts statute specifying a Board of Health's powers regarding infectious diseases is conspicuously missing from their entire Motion.

Fortunately, the Defendants have not exercised their authority under this statute in response to COVID-19, as due to the nature of COVID-19 such quarantine measures would be appallingly abusive in response to a germ that cannot be eradicated or effectively contained. Clearly, if the Board of Health has chosen to not exercise its legitimate powers specified by the truly relevant statute, that does not excuse or justify the Board of Health using the wrong statutes to exercise powers they have invented and granted themselves. "Administrative agencies are creatures of statute. They accordingly possess only the authority that Congress has provided." *National Federation of Independent Business v. Department of Labor, OSHA*. 595 U. S. (2022)

## 7. The *other* applicable statute

In their Memorandum of Law the Defendants cited but did not discuss *Jacobson v. Massachusetts*, 197 U.S. 11 (1905). That case and the Massachusetts statute (M.G.L. Ch. 111 § 181) underlying it are relevant here, as they undermine rather than support the Defendants' arguments.

As we mentioned, there are two Massachusetts statutes that specify what a Board of Health can order town inhabitants to do in response to an outbreak of dangerous infectious disease in town—neither of which the Defendants have mentioned or addressed. One is M.G.L. Ch. 111 § 95, which as we explained above only empowers a Board of Health to quarantine an infected person. The other statute is M.G.L. Ch. 111 § 181, which underlies the *Jacobson* case and in its present day form is so short and clear that we can easily quote it in its entirety here: "Boards of health, if in their opinion it is necessary for public health or safety, shall require and enforce the vaccination and revaccination of all the inhabitants of their towns, and shall provide them with the means of free vaccination. Whoever refuses or neglects to comply with such requirement shall forfeit five dollars."

As the Defendants have attempted to use the *Jacobson* case and its underlying statute as justification for the Carlisle Board of Health's unlawful face mask mandate, it is important to note that statute: 1) applies to vaccinations only, not other medical devices or products such as face masks, 2) does not allow for unconditional, compulsory vaccination, nor does it authorize anyone to bar persons entry or restrict their participation in society as the Defendants have done with their face mask orders, 3) merely authorizes a Board of Health to impose a $5 fine if an individual chooses not to take the vaccination, which is an option the Defendants have not offered with their

unlawful face mask mandates, 4) does not authorize mandatory usage of vaccines or other medical products lacking full efficacy and formal approval for stopping the spread of infectious disease (e.g. face masks), 5) does not authorize mandatory usage of medical products with a substantial degree of documented harms (e.g. face masks).

The Defendants' assertion that the Board of Health's face mask mandate should be assessed using the rational basis standard of review is incorrect. Clearly, if municipal officials or employees issued medical orders that they do not have the statutory authority to issue and which bar people from full participation in society unless they comply with the unlawful orders as the Defendants have done here, no standard of review need be employed, as the orders are simply invalid and must be stricken. "An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." *Norton v. Shelby County*, 118 U.S. 425, 426 (1886)

Additionally, "*Jacobson* predates judicially established tripartite nuanced tiers of review to assess a statute's constitutionality. Under those tiers, if the right infringed is fundamental or the law relies upon a suspect classification, strict scrutiny is applied. *San Antonio Indep. Sch. Dist. v. Rodriguez*,411 U.S. 1, 17 (1973). Under that standard, a law is upheld only if it is narrowly tailored to a 'compelling state interest.' *City of Cleburne, Tex. v. Cleburne Living Ctr.*,473 U.S. 432, 440 (1985). If the law does not infringe upon a fundamental right but 'incidentally' burdens a First Amendment right or implicates a quasi-suspect classification such as one predicated on gender, intermediate scrutiny would apply. See *United States v. O'Brien*,391 U.S. 367, 376 (1968) (First Amendment); Craig v. Boren,420 U.S. 190 (1976) (gender discrimination). Under that standard the law must also be narrowly tailored but must need be 'no greater than is essential' to the furtherance of an important or substantial governmental interest." *O'Brien*, 391 U.S. at 376-77. *Doe v. Franklin Square Union Free Sch. Dist.*, 2:21-5012-FB-SIL, 4-5 (E.D.N.Y. Oct. 26, 2021)

This Court must accept as true our Complaint's factual assertion that the Board of Health exceeded its powers and must let this matter go forward to discovery as a question of fact, not a question of law subject to dismissal in our Complaint.

## The Defendants' huge footnote regarding the library's policy is inaccurate

On page 10 of their Memorandum of Law, the Defendants admit that the Gleason Public Library Board of Trustees adopted the face mask policy we referenced in our Complaint and Exhibits. We had been under the impression that the Director of the Gleason Public Library, Defendant Martha Feeney-Patten, was solely

responsible for the unlawful policy, as Feeney-Patten had communicated it in publicly-distributed email newsletters of the Gleason Public Library. If in fact the Board of Trustees approved the unlawfully discriminatory policy, apparently its members need to be added as Defendants and/or fact discovery is needed to determine the Board of Trustees' degree and nature of involvement in this unlawful policy.

In their huge footnote regarding the Gleason Public Library's unlawful face mask requirement, the Defendants cite orders issued by MA Governor Baker and the MA Department of Public Health. Those orders explicitly allowed for medical exemptions to face mask requirements, as the Carlisle Board of Health's order does but which the Gleason Public Library's face mask policy never has. In the Gleason Public Library's email newsletter presented as Exhibit 3 with our Complaint, Defendant Martha Feeney-Patten stated that, "Masks are still required for all visitors age 2 and up, in consideration of our high usage by as-yet-unvaccinated children and medically vulnerable individuals. Please contact us at 978-369-4898 or director@gleasonlibrary.org with any questions." That made it quite clear that those of us who cannot wear face masks are not allowed or welcome in the public library. Would tacking on "please contact us with any questions" after stating "blind people and those prone to seizures are no longer allowed in the library as they get in the way", "to enter and remain in the library all patrons must wear a yarmulke or hijab", or "those of skin color darker than beige may not receive or use services inside the library" magically render such discriminatory policies lawful?

Additionally, the MA orders the Defendants cite to explain the public library's unlawful face mask policy do not give any powers or authority to public library personnel. As the Defendants effectively admit that neither the town/library nor Defendant Feeney-Patten had any legal authority to issue a face mask mandate, our claims against them must then survive the Defendants' Motion to dismiss.

The Defendants also mention that "only one plaintiff, Monica Granfield, alleges she was instructed by a member of the library staff to wear a mask" and claim this somehow means we "lack standing to challenge the Gleason Public Library mask mandate." The Defendants have entirely missed the point. The Gleason Public Library's unlawful face mask mandate was in effect and publicly communicated long before the Board of Health's order was issued. Because of the Gleason Public Library's unlawful face mask mandate, several of us have refrained from even entering the library for fear of being harassed or discriminated against. Plaintiff Monica Granfield's experience we noted in our Complaint confirmed for us that we would indeed be subject to such harassment and discrimination. Undersigned Plaintiff Michael Bush has not been in the public library in about two

years now because of this policy that unlawfully discriminates against people like him for whom face masks are medically contraindicated. As the facts we stated in our Complaint and its exhibits regarding the public library's policy establish claims eligible for relief that are at the very least plausible, our claims against the Town of Carlisle, Defendant Martha Feeney-Patten (the Director of the Gleason Public Library), and Timothy Goddard (the Town Administrator and Americans with Disabilities Act Coordinator) must survive the Defendants' Motion to dismiss.

## Our Complaint *does* state a claim for relief under the ADA

The Defendants state, "… in denying plaintiffs access to indoor public spaces unless they wear face masks, the BOH is not discriminating against plaintiffs because of their disability. All mask-less visitors are treated alike; no visitors can enter indoor public spaces unless they don a mask." Yet in a subsequent paragraph the Defendants contradict themselves by claiming, "… the Carlisle BOH mask mandate contains a carveout – by its express terms, the mandate does not apply to those individuals who are 'unable to wear a face mask due to a medical condition or disability ....'"And then the Defendants proceed to inexplicably assert that, "The failure to wear face masks in indoor public places during the COVID-19 pandemic poses a significant risk to the health or safety of other visitors." If that were true, why then would the Board of Health provide an exemption for those unable to wear a face mask due to a medical condition or disability??... The Defendants' section regarding the Americans with Disabilities Act (ADA) is self-contradictory and stunningly disconnected from relevant facts.

In their Memorandum of Law the Defendants fail to distinguish between a dejure disability and a de facto disability under the ADA. A de facto disability is created by policies that discriminate against persons who would not ordinarily be disabled but are rendered so in the legal sense by a policy whose requirements that for medical reasons those persons cannot meet. Apparently, some of the Defendants (or someone advising them) understood this when writing the Board of Health face mask mandate, as it does indeed contain a carveout so as to avoid creating de facto disabilities. We agree with the Defendants that this Court should therefore dismiss our claims as they relate solely to the ADA and the Board of Health's face mask mandate. But since the Gleason Public Library's face mask mandate predated the Board of Health's mandate and has never included such a carveout to avoid discriminating on the basis of de facto disability, our claims against the Town of Carlisle for the ADA violations as they relate to the Gleason Public Library's face mask mandate under Count I must by upheld.

## Our Complaint *does* state a claim for relief under the 14th Amendment

Upon reviewing this since filing our Complaint, we realize that the 14th Amendment to the U.S. Constitution is not merely called the "Equal Protection Clause". We intend to apply the entire 14th Amendment to our case, not merely the Equal Protection Clause within. As Pro Se Plaintiffs we humbly request this Court's understanding. "… a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

It is our understanding that the Fourteenth Amendment creates numerous rights enforceable under § 1983, including due process, the equal protection of the laws, and those rights in the Bill of Rights incorporated by the Due Process Clause of the Fourteenth Amendment.

We contend that it is commonly known in our society that some religions require certain or all adherents to wear head and/or face coverings. Some Muslim sects require women to wear hijabs, niqabs, and/or burkas; some Jewish sects require men to wear yarmulkes / kippahs, etc. Other religions proscribe wearing face coverings or using certain medical interventions for various reasons. These religious beliefs and practices are constitutionally-protected rights in this country. Thus, it was reasonable for the Defendants to anticipate that mandating face masks to participate fully in society might infringe on some people's constitutionally-protected religious beliefs and practices. The Defendants either have not taken that into consideration (even after being informed of that in our Notice and Demand letter which was later incorporated as an Exhibit to our Complaint) or *have* taken that into consideration yet still refuse to provide a religious carveout in their face mask policies—despite the Board of Health including a medical carveout in their face mask mandate as required by state and federal civil rights laws.

Some of us Plaintiffs have sincerely held religious beliefs that proscribe our wearing face masks and/or submitting to coerced medical devices/products such as face masks. We could have presented our individual beliefs and practices with our Complaint but detailed factual allegations are not required in a Complaint.

By mandating that people wear face masks to enter and remain in indoor spaces open to the public without a religious carveout, the Defendants have not merely infringed some Plaintiffs' right to free exercise of religion, the Defendants have also infringed on those Plaintiffs' 1st Amendment right to peaceably assemble and their 1st Amendment right to petition the Government for a redress of grievances.

The Defendants have argued that the face mask mandates in question should be subject to merely a rational basis standard of review. This is incorrect. As the Defendants' mandates have infringed the Plaintiffs' fundamental rights, the applicable standard of review is strict scrutiny. "… even a neutral, generally applicable law is subject to

strict scrutiny under this Clause if it restricts the free exercise of religion and another constitutionally protected liberty, such as the freedom of speech or association, or the right to control the upbringing of one's children", See *Smith*, 494 u.s. at 881-82; *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1295-97 (10th Cir. 2004).

The Ninth Circuit has reaffirmed the Court's recognition of "fundamental rights to determine one's own medical treatment," "to refuse unwanted medical treatment," and "a fundamental liberty interest in medical autonomy." *Coons v. Lew*, 762 F.3d 891, 899 (9th Cir. 2014), as amended (Sept. 2, 2014) (citing *Cruzan ex rel. Cruzan,* 497 U.S. at 278, *Washington v. Glucksberg*, 521 U.S. 702, 724 (1997), and *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 851 (1992)). Given that competent persons have a constitutionally protected liberty interest in medical autonomy, the Fourteenth Amendment protects individuals from its deprivation without due process of law. See *Cruzan ex rel. Cruzan*, 497 U.S. at 279. *Magney v. Cnty. of Humboldt*, Case No. 17-cv-02389-HSG, 6 (N.D. Cal. Dec. 10, 2018)

Although the State's concern for mitigating a public health crisis is undeniably weighty, "[n]o public interest is served by maintaining an unconstitutional policy when constitutional alternatives are available to achieve the same goal." *Agudath Israel of Am. v. Cuomo* , 983 F.3d 620, 637 (2d Cir. 2020) ; see also *Hernandez v. Ses*sions , 872 F.3d 976, 996 (9th Cir. 2017) ("[T]he injunction serves the interests of the general public by ensuring that the government's ... procedures comply with the Constitution."). "[E]ven in a pandemic, the Constitution cannot be put away and forgotten." *Roman Cath. Diocese* , 141 S. Ct. at 68. Thus, as both the Supreme Court and our court have agreed: Even in a case with such vital interests on each side, the balance of harms and the public interest require us to enjoin the State's unconstitutional practices. Indeed, neither court appears to have had much difficulty reaching such a conclusion. See id. at 67–68 ; *Calvary Chapel* , 982 F.3d at 1234. *Harvest Rock Church, Inc. v. Newsom*, 985 F.3d 771, 774 (9th Cir. 2021)

Count II under the 14th Amendment must be upheld.

## The individual defendants are clearly *not* entitled to qualified immunity

The Defendants quoted a good deal of case law regarding qualified immunity but: 1) failed to distinguish between qualified immunity in the Defendants' *official* capacities and their *individual* capacities, 2) failed to connect the case law to the facts of *this* case, and 3) failed to recognize that municipal officials and personnel are simply *not* entitled to qualified immunity in their official capacities. See *Eng. v. Cooley*, 552 F.3d 1062, 1064 n.1 (9th Circuit 2009); *Hallstrom v. City of Garden* City, 991 F.2d 1473, 1482 (9th Circuit 1992).

By quoting the particular case law they chose, the Defendants have impliedly asserted that, 1) they had no reason to know they lacked the legal authority to issue the mandates they issued, 2) they had no reason to know their mandates violated people's legal rights, and 3) those rights were not clearly established. As we established in our earlier sections about the Board of Health and the public library personnel lacking the authority to issue face mask mandates, we contend they certainly did have reason to know they lacked that legal authority. That is a significant factual dispute regarding point #1 above. As for points 2 and 3, our Complaint established that the Defendants persisted with their unlawful mandates even after we informed them in writing what legal rights they were violating. As they apparently dispute this, we clearly have yet another significant factual dispute that requires the Defendants' Motion be denied.

As for the Defendants' potential qualified immunity in their individual capacities, as the Director of the Gleason Public Library communicating an unlawfully discriminatory policy which she and the Board of Trustees had no legal authority to create in the first place, Defendant Martha Feeney-Patten obviously has no qualified immunity in any capacity. As for the other individual Defendants, our Complaint established that they forfeited their qualified immunity in their individual capacities by their unlawful enforcement of an otherwise valid statute. Unlawful enforcement of an otherwise valid statute demonstrates unreasonable behavior depriving a government official of qualified immunity.  See *Pierce v. Multnomah Cty., Or.,* 76 F.3d 1032, 1037 (9th Cir. 1996); *Chew v. Gates*, 27 F.3d 1432, 1450 (9th Cir. 1994)

Moreover, according to the case law the Defendants provided, by persisting with their unlawful mandates even after we notified the Defendants of the applicable laws and their violations of them, these Defendants forfeited their qualified immunity in their individual capacities. "They had more than "fair warning" that their conduct was unconstitutional. *Tolan v. Cotton* , 572 U.S. 650, 656, 134 S.Ct. 1861, 188 L.Ed.2d 895 (2014) (citation omitted). In fact, they knew it was. See Maj. Op. 985." *Christ v. Univ. of Iowa*, 991 F.3d 969, 990 (8th Cir. 2021)

"The individual defendants may pick their poison: they are either plainly incompetent or they knowingly violated the Constitution. Either way, they should not get qualified immunity." *Christ v. Univ. of Iowa*, 991 F.3d 969, 990 (8th Cir. 2021)

Thus, our claims against the Defendants in both their official and individual capacities must be upheld.

# Our Complaint *does* state a claim for relief under the Civil Rights Act of 1964

As the Defendants state, this law prohibits discrimination in places of public accommodation on the basis of religion. As we explained above in the 14th Amendment section, some of us do have religious beliefs and practices that proscribe our complying with a face mask mandate.

The Constitution's protection against government regulation of religious belief is absolute; it is not subject to limitation or balancing against the interests of the government. *Smith*, 494 U.S. at 877; *Sherbert*, 374 U.S. at 402; see also *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943)

The Free Exercise Clause protects beliefs rooted in religion, even if such beliefs are not mandated by a particular religious organization or shared among adherents of a particular religious tradition. *Frazee v. Illinois Dept. of Emp't Sec.*,489 U.S. 829, 833-34 (1989). As the Supreme Court has repeatedly counseled, "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Church of the Lukumi Babalu Aye v. Hialeah*, 508 U.S. 520, 531 (1993) (internal quotation marks omitted). They must merely be "sincerely held." *Frazee*, 489 U.S. at 834.

A law "substantially burden[s] a person's exercise of religion," 42 U.S.C. § 2000bb-1, if it bans an aspect of the adherent's religious observance or practice, compels an act inconsistent with that observance or practice, or substantially pressures the adherent to modify such observance or practice, see *Sherbert*, 374 U.S. at 405-06.

Further, the Chief Justice in his unanimous opinion details that, assuming a plaintiff presents prima facie evidence of a substantial burden on a sincerely held religious exercise, the government bears the burden to prove that the law in question furthers a compelling governmental interest by the least restrictive means available. *Navy Seal 1 v. Biden*, 8:21-cv-2429-SDM-TGW, 18 (M.D. Fla. Nov. 22, 2021)

The Navy servicemembers in this case seek to vindicate the very freedoms they have sacrificed so much to protect. The COVID-19 pandemic provides the government no license to abrogate those freedoms. There is no COVID-19 exception to the First Amendment. *U.S. NAVY SEALs 1-26, et al., v. JOSEPH R. BIDEN, JR.*, et al., 4:21-cv-01236-O (N.D. Tex. Jan. 3, 2022)

As our Complaint and its accompanying exhibits plausibly asserted that the Defendants violated our rights under the Title II of the Civil Rights Act of 1964, Count IV must be upheld.

## Defendants' assertions about counts III and V-X are inaccurate

The Defendants' sole and unsupported argument for dismissal of Counts III and V-X is that those provisions do not contain a private right of action for civil relief. That argument is faulty in a few respects.

First, Count IX is pursuant to M.G.L. Ch. 272 § 98 (enclosed as Exhibit 8), which states that it is a civil

right, those aggrieved by its violation are entitled to sue, and such civil forfeiture shall be of an amount not less than

three hundred dollars.

Second, whether a particular provision contains a private right of action for civil relief is not the criteria the

Courts have established for whether a claim pursuant to §1983 should be dismissed.

Dismissal is proper if Congress specifically foreclosed a § 1983 remedy, *Smith v. Robinson,* 468 U.S. 992,

1005, n. 9, 1003, either expressly, by forbidding recourse to § 1983 in the statute itself, or impliedly, by creating a

comprehensive enforcement scheme that is incompatible with individual § 1983 enforcement, *Livadas v.Bradshaw*,

512 U.S. 107, 133. Pp. 340-341. *Blessing v. Freestone*, 520 U.S. 329, 330 (1997). Our claims in Counts III and V-X

easily clear these criteria for dismissal, for none of these provisions expressly forbid recourse to §1983 and none of

them have a comprehensive enforcement scheme that is incompatible with §1983 enforcement. Additionally, "in

any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental

jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they

form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367.

Thus, Counts III and V-X survive Court-established and statutory criteria for dismissal and this Court may

exercise jurisdiction over them.

## Our Complaint *does* state claims for relief against Fantasia and Goddard

Defendants Linda Fantasia and Timothy Goddard assert that because they "carried out" rather than voted

on these unlawful face mask mandates, we have no claim to relief against them. They present no support for that

incorrect argument.

Defendants Fantasia and Goddard were full-time paid employees of the Town of Carlisle. The Board of

Health member Defendants were merely part-time volunteers. Thus, it would be reasonable to expect that upon

having received our Notice and Demand letters in September 2021 addressed to them personally, Defendants

Goddard and Fantasia would swiftly act to correct any constitutional or civil rights violations our letters informed

them of. But as our Complaint established, Goddard has never responded or acted. And Fantasia merely sent

Plaintiff Michael Bush a one-sentence email message acknowledging receipt but communicating nothing else. And

the Defendants' unlawful mandates have continued on with no corrective action taken by any of the Defendants.

See *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) regarding defendants' supervisory liability in §1983 suits. (direct participation in wrongdoing, failure to remedy wrong after being informed of it, creation of policy or custom, grossly negligent supervision, or deliberately indifferent failure to act on information about constitutional violations). See also *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003); *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002). *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 254 (5th Cir. 2005) (deliberate indifference standard; adopting *Farmer v. Brennan*, 511 U.S. 825 (1994), definition of deliberate indifference); *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005) (deliberately indifferent training or supervision causally linked to violation of plaintiff 's rights). Clearly, Defendants Goddard's and Fantasia's failure to remedy these wrongs after being notified of them and deliberate indifference demand our claims against them be upheld.

## Pro Se Plaintiffs are entitled to amend to cure deficiencies

"Unless it is absolutely clear that no amendment can cure the defect… a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.,* 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also *Lopez v. Smith*, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc); *Walker v. Beard*, 789 F.3d 1125, 1139 (9th Cir. 2015); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ("[B]efore dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." (citation and internal quotation marks omitted)); *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1196 (9th Cir. 1998); *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623–24 (9th Cir. 1988); *Eldridge v. Block*, 832 F.2d 1132, 1135–36 (9th Cir. 1987).

"While [the] statement of deficiencies need not provide great detail or require district courts to act as legal advisors to pro se plaintiffs, district courts must at least draft a few sentences explaining the [complaint's] deficiencies." *Eldridge*, 832 F.2d at 1136; see also *Karim-Panahi*, 839 F.2d at 625.

## Summary & Conclusion

The Defendants' counsel did not meet Local Rule 7.1(a)(2)'s requirement to serve and file this Motion, therefore it is defective and should be summarily denied. As we are being harmed by these ongoing constitutional,

human, and civil rights violations by the Defendants, we respectfully request that this Court deny the Defendants' Motion swiftly.

If, however, this Court concludes that Rule's requirements were fulfilled, then:

There were two separate face mask mandates with distinct requirements issued by different town personnel. Neither the Board of Health nor any of the other Defendants had the statutory authority to mandate the usage of face masks (which are classified as medical devices by the FDA; and the FDA has not approved face masks to stop the spread of COVID-19 and expressly prohibits such claims about face masks). Face masks also have a range of documented harms to the user which we notified the Defendants of and they have failed to provide that informed consent to the public with their mandates.

We concur with the Defendants that this Court should dismiss our claims as they relate solely to the ADA and the Board of Health's face mask mandate. But the Gleason Public Library's different face mask mandate has been in violation of the ADA, thus our claim for ADA violations against the Town of Carlisle under Count I must be upheld.

A number of our constitutional and fundamental rights have been infringed by the Defendants' face mask mandates, thus Count II under the 14th Amendment must be upheld.

Municipal personnel are not entitled to qualified immunity in their official capacities. And by persisting with their violations of our rights after we notified them in writing of those laws and violations with specificity, the Defendants forfeited their qualified immunity in their individual capacities. They also forfeited their qualified immunity in all capacities by their unlawful enforcement of an otherwise valid statute. Thus, our claims against the Defendants in both their official and individual capacities must be upheld.

With their face mask mandates, the Defendants have subjected some of us to religious discrimination and segregation in violation of Title II of the Civil Rights Act of 1964. Thus, Count IV must be upheld.

The Defendants have presented no legally valid argument why Counts III and V-X should be dismissed. Those claims and provisions successfully clear Court-established and statutory criteria for dismissal. Thus, those Counts must be upheld and this Court may exercise original and supplementary jurisdiction over them.

With their failures to remedy wrongs and deliberate indifference, Defendants Goddard and Fantasia created supervisory liability for themselves. Thus, the claims against them must be upheld.

There are a number of significant factual disputes between the Plaintiffs and the Defendants which require denial of the Defendants' Motion as well.

Wherefore, the undersigned Pro Se Plaintiffs request the Court grant in part the Defendants' Motion to dismiss our claims as they relate solely to the ADA and the Board of Health's face mask mandate while otherwise denying the Defendants' Motion to Dismiss. Should this Court deem it proper to dismiss more than our claims as they relate solely to the ADA and the Board of Health' face mask mandate, then as Pro Se Plaintiffs we respectfully request guidance from this Court as to what our Complaint's deficiencies are so that we may amend it to cure those specified deficiencies.

Respectfully submitted,

_Michael Bush_____, Pro Se
Michael Bush
280 Lowell Street
Carlisle MA 01741
*Bmoc54@verizon.net*
Phone: (978) 734-3323

January 17, 2022

*/s/ Ann Linsey Hurley,* Pro Se
Ann Linsey Hurley
10 Half Moon Hill
Acton MA 01720
Phone: 978-793-7291

_Pro Se_
Joseph Provencaro
80 Mill Pond Lane
Carlisle, MA 01741

January 17, 2022
_Pro Se_
Lisa Tiernan
116 Lowell Rd.
Westford, MA 01886

January 18, 2022
PRO SE
ROBERT EGRI
80 WILLDWOOD
CARLISLE, MA 01741

January 18, 2022
Katalin Egri _Pro Se_
KATALIN EGRI
80 Wildwood Drive
CARLISLE, MA 01741

January 17, 2022
_Pro Se_
Linda K. TAYLOR
879 Concord Street
Carlisle, MA 01741

JANUARY 17, 2022
Monica Granfield,
_Prose_
MONICA GRANFIELD
110 CARLISLE Pines Dr
CARLISLE, MA 01741

January 17, 2022
_PRO SE_
Susan L. Provenzano
80 Mill Pond Lane
Carlisle, MA 01741

## CERTIFICATE OF SERVICE

I, Michael Bush, hereby certify that I have, on this <u>18th</u> day of January, 2022, electronically served a copy of the foregoing and any accompanying document(s) pursuant to Fed. Rule Civ. Proc. 5(b)(2)(E) and Local Rule 5.2 upon the following:

John J. Davis, BBO #115890

10 Post Office Square, Suite 1100N

Boston, MA 02109

_Michael Bush_, Pro Se

Michael Bush