UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL BUSH; LINDA TAYLOR; <br> LISA TIERNAN; KATE HENDERSON; <br> ROBERT EGRI; KATALIN EGRI; <br> ANITA LOPEZ; MONICA GRANFIELD; <br> ANN LINSEY HURLEY; IAN SAMPSON; <br> SUSAN PROVENZANO; and JOSEPH PROVENZANO, <br> *pro se* Plaintiffs, <br><br> VS. <br><br> LINDA FANTASIA;  MARTHA FEENEY-PATTEN; <br> ANTHONY MARIANO; CATHERINE GALLIGAN; <br> JEAN JASAITIS BARRY; PATRICK COLLINS; <br> DAVID ERICKSON; TIMOTHY GODDARD; and <br> TOWN OF CARLISLE, <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. NO. 1:21-cv-11794-ADB <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)
[LEAVE TO FILE GRANTED ON FEBRUARY 1, 2022]**

Defendants, Linda Fantasia, Martha Feeney-Patten, Anthony Mariano, Catherine Galligan, Jean Jasaitis Barry, Patrick Collins, David Erickson, Timothy Goddard and Town of Carlisle, hereby submit this Reply Brief pursuant to Local Rule 7.1(b)(3) to address several matters raised in plaintiffs' Opposition to defendants' Motion to Dismiss under Rule 12(b)(6) that were not and could not reasonably have been anticipated and addressed in defendants' initial Memorandum of Law.

**1.      Even Liberally Construed, Plaintiffs' Complaint Fails to State Claims for Relief Under the ADA.**

In their Opposition, plaintiffs argue this Court should construe their Complaint "liberally" on the grounds they are *pro se* litigants, not attorneys.  (Opposition, at 6).  Admittedly, *pro se* filings are to be liberally construed and interpreted less strictly than those drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A court's

liberality, however, is not without limits.  See Boivin v. Black, 225 F.3d 36, 43 (1st Cir. 2000); Ahmed v. Rosenblatt, 118 F.3d 886, 891 (1st Cir. 1997). "[P]ro se status does not free a litigant in a civil case of the obligation to comply with procedural rules." Ruiz Rivera v. Riley, 209 F.3d 24, 28 & n.2 (1st Cir. 2000).  "Even pro se pleadings must … follow procedural and substantive law and, therefore, present sufficient facts to suggest an actionable claim." Cavitt v. Massachusetts Dep't of Corrections, 2021 WL 91277, *2 (D. Mass. Jan. 11, 2021).  See Ferranti v. Moran, 618 F.2d 888, 890 (1st Cir. 1980) (pro se plaintiffs must plead "basic facts sufficient to state a claim").

Regardless of how their Complaint is construed, plaintiffs present insufficient facts to suggest an actionable claim for disability discrimination as they fail to allege (among other facts) that they are "disabled" within the meaning of the ADA.  See Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 32 (1st Cir. 2010) (plaintiff has burden of establishing disability).  A disability is defined as "a physical or mental impairment that substantially limits one or more major life activities …." 42 U.S.C. § 12102(1)(A); 28 C.F.R. § 35.108. A "physical or mental impairment" is "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems ...," such as the respiratory or immune systems.  28 C.F.R. § 35.108(b)(1)(i).  Mr. Bush alleges no "physical or mental impairment," only that a face mask is "medically inappropriate for him to wear." (Complaint, Sec. III(C), ¶ 4).  His underlying "disorder or condition" remains undisclosed.  The other plaintiffs allege no disability or impairment whatsoever.  Such allegations are not sufficient to state ADA claims.

**2.**    **M.G.L. c. 111, § 31 Applies to Infectious Diseases Transmitted Among Humans.**

In support of their Motion to Dismiss, defendants argue that the Carlisle BOH had authority to issue a mask mandate under M.G.L. c. 111, § 31 (among other provisions).  In Opposition, plaintiffs claim they "find no mention of infectious diseases transmitted between people"

contained in Section 31 and therefore conclude that the statute applies only to infectious diseases presumably transmitted between animals, fruits and vegetables. (Opposition, at 9). The statute contains no such limitation. Local Boards of Health are responsible for protecting the health and safety of the general public. This includes the transmission of infectious diseases among humans. "The focus of public health is to protect the health of *every member of a community*." American Lithuanian Naturalization Club, Athol, Mass., Inc. v. Board of Health of Athol, 446 Mass. 310, 318 (2006) (emphasis added) (upholding authority of board of health to impose smoking ban in private clubs). Section 31 grants boards of health "plenary power to promulgate reasonable health regulations that are general in application and take effect prospectively." Independence Park, Inc. v. Board of Health of Barnstable, 403 Mass. 477, 479 (1988). As the SJC has held, the rule-making authority of boards of health is "broad." Athol, 446 Mass. at 317.

> Our standard of review of health regulations is settled: they have a strong presumption of validity, stand on the same footing as would a statute, and a reviewing court must make all rational presumptions in favor of [their] validity.

Id. (quotations and citations omitted). Plaintiffs' narrow reading of M.G.L. c. 111, § 31 (and the BOH's authority) must be rejected.

**3.    The Carlisle BOH had Authority to Issue a Mask Mandate Under M.G.L. c. 111, §104.**

In their Opposition, plaintiffs also challenge the BOH's reliance on M.G.L. c. 111, § 104 as authority for its issuance of a mask mandate. (Opposition, at 9-10). In so doing, plaintiffs insist the BOH had reason to know COVID "did not rise to the level of 'a disease dangerous to the public health'" and, even if it did, the BOH was authorized only to use "all possible *care*" to prevent the spread of the infection, not "all possible *means*."

Again, plaintiffs understate the BOH's authority as well as this Court's role in reviewing local board of health regulations. Faced with overwhelming medical evidence from the World

3

Health Organization,[1] the Centers for Disease Control & Prevention,[2] the Journal of the American Medical Association,[3] and the Mayo Clinic[4] (among other sources) regarding the utility of face masks in reducing the spread of COVID-19, the BOH was well within its authority to adopt reasonable measures to protect the public health of the Carlisle community.  Indeed, the statute is mandatory – the board "*shall use* all possible care …." M.G.L. c. 11, § 104 (emphasis added). "Care" is defined as: "[w]atchful attention; concern; custody; diligence; discretion; caution; … prudence; regard; preservation; security; support; vigilance." Black's Law Dictionary, at 213 (6th ed.1990).  Mandated use of "all possible care" to prevent the spread of a dangerous infection clearly contemplates a board's diligent exercise of all reasonable *means* to do so.  The maxim of *noscitur a sociis* so liberally invoked by plaintiffs counsels a court to interpret questionable or doubtful words or phrases in a stature by reference to the meaning of other words or phrases associated with it – *i.e*., by the company it keeps. Yates v. United States, 574 U.S. 528, 543-44 (2015).  The phrase "shall use all possible care" is neither doubtful nor vague.  See Russell Motor Car Co. v. United States, 261 U.S. 514, 519 (1923) (maxim has "no place … except in the domain of ambiguity.")  More importantly, in the context of "prevent[ing] the spread of the infection" of

---

[1] "Masks should be used as part of a comprehensive strategy of measures to suppress transmission and save lives …." https://www.who.int/emergencies/diseases/novel-coronavirus-2019/advice-for-public/when-and-how-to-use-masks (last visited Feb. 1, 2022).
[2] "Correct and consistent mask use is a critical step everyone can take to prevent getting and spreading COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/your-health/effective-masks.html (last visited Feb. 1, 2022).
[3] "Compelling data now demonstrate that community mask wearing is an effective nonpharmacologic intervention to reduce the spread of this infection, especially as source control to prevent spread from infected persons, but also as protection to reduce wearers' exposure to infection." https://jamanetwork.com/journals/jama/fullarticle/2776536 (last visited Feb. 1, 2022).
[4] "Face masks combined with other preventive measures, such as getting vaccinated, frequent hand-washing and physical distancing, can help slow the spread of the virus that causes COVID-19." https://www.mayoclinic.org/diseases-conditions/coronavirus/in-depth/coronavirus-mask/art-20485449 (last visited Feb. 2022)

a dangerous disease, the phrase must not be so narrowly construed as plaintiffs insist. "Care" includes the adoption of reasonable preventative "measures."

**4.       Plaintiffs' Complaint Fails to State Claims for Relief Under the First Amendment.**

In an effort to overcome the shortcomings of their ADA claims, plaintiffs now insist the mask mandate violates their First Amendment rights to free exercise of religion, to peaceably assemble and to petition government for redress of their grievances. (Opposition, at 15-16). Such rights are not invoked in plaintiffs' Complaint and no facts supporting alleged violations of such rights are pled by any of the twelve individual plaintiffs. Nonetheless, in Delaney v. Baker, 511 F. Supp. 3d 55 (D. Mass. 2021), Judge William Young dismissed plaintiff's claim that Governor Baker's mask mandate violated his religious beliefs and, therefore, his right to free exercise of religion. In so doing, Judge Young cited the Supreme Court's ruling that "stopping the spread of society-threatening disease is 'unquestionably' a compelling interest." Id., at 73 (quoting Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S.Ct. 63, 67 (2020)). He also found the Governor's mandate "neutral and of general applicability." Id. Therefore, it need only be rationally related to a compelling state interest to pass constitutional muster. The Governor's mandate, concluded Judge Young, satisfied this standard. Id., at 74. Applying the same analysis here, the BOH mask mandate does not violate plaintiffs' right to free exercise of religion.

The right to peaceably assemble has largely been subsumed by the freedom of association. Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 658 (10th Cir. 2006). The First Amendment protects two types of associative freedom – the right to expressive association, and the right to intimate association. Expressive association remains closely affiliated with the right to free speech. People have the right to associate together for expressive purposes, often political purposes. NAACP v. Alabama *ex rel* Patterson, 357 U.S. 449, 463 (1958). People also

5

have the right to maintain close familial or other private associations free from state interference. Roberts v. United States Jaycees, 468 U.S. 609, 619 (1984). "Intimate association" is the right to associate with others in a relationship that "cultivat[es] and transmit[s] shared ideals and beliefs …." Such relationships "foster diversity and act as critical buffers between the individual and the power of the State." Id., at 618-19.

Plaintiffs state no facts to support a claim that the mask mandate somehow interferes with their rights to engage in activities protected by the First Amendment. Nor do they state facts to support a claim that the mask mandate (which applies only to public places) somehow interferes with their rights to associate with others with shared ideals or beliefs. Even if they did, any infringement on such rights – whether expressive or intimate – is supported by the "compelling" state interest of stemming the spread of COVID-19. Roman Catholic Diocese of Brooklyn, 141 S.Ct. at 67. Plaintiffs' First Amendment claims fail.

WHEREFORE, for the reasons set forth in their Memorandum of Law in Support of Motion of Defendants to Dismiss Plaintiffs' Complaint Under Rule 12(b)(6), and for the reasons set forth above, the defendants, Linda Fantasia, Martha Feeney-Patten, Anthony Mariano, Catherine Galligan, Jean Jasaitis Barry, Patrick Collins, David Erickson, Timothy Goddard and Town of Carlisle, hereby request that this Honorable Court allow their Motion to Dismiss plaintiffs' Complaint and thereafter order said Complaint dismissed under Rule 12(b)(6) for failure to state claims upon which relief can be granted.

        Respectfully submitted,

        The Defendants,

        LINDA FANTASIA, MARTHA FEENEY-PATTEN, ANTHONY MARIANO, CATHERINE GALLIGAN, JEAN JASAITIS BARRY, PATRICK COLLINS, DAVID ERICKSON, TIMOTHY GODDARD and TOWN OF CARLISLE,

        By their Attorneys,

        **PIERCE DAVIS & PERRITANO** LLP

        */s/ John J. Davis*

        _____
        John J. Davis, BBO #115890
        10 Post Office Square, Suite 1100N
        Boston, MA 02109
        (617) 350-0950
        jdavis@piercedavis.com

Dated: February 2, 2022

## CERTIFICATE OF SERVICE

      I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on February 2, 2022 as follows:

Michael Bush
280 Lowell Street
Carlisle, MA 01741

Linda Taylor
879 Concord Street
Carlisle, MA 01741

Lisa Tiernan
116 Lowell Street
Westford, MA 01886

Kate Henderson
559 Lowell Street
Carlisle, MA 01741

Robert Egri
80 Wildwood Drive
Carlisle, MA 01741

Katalin Egri
80 Wildwood Drive
Carlisle, MA 01741

Anita Lopez
51 Bingham Road
Carlisle, MA 01741

Monica Granfield
110 Carlisle Pines Drive
Carlisle, MA 01741

Ann Linsey Hurley
10 Half Moon Hill
Acton, MA 01720

Ian Sampson
315 Fiske Street
Carlisle, MA 01741

Susan Provenzano
80 Mill Pond Lane
Carlisle, MA 01741

Joseph Provenzano
80 Mill Pond Lane
Carlisle, MA 01741

*/s/ John J. Davis*
_____
John J. Davis, Esq.