UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL BUSH, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * Civil Action No. 1:21-cv-12039-IT |
| | * |
| ACTON-BOXBOROUGH REGIONAL | * |
| SCHOOL DISTRICT, et al, | * |
| | * |
| Defendants. | |

MEMORANDUM & ORDER

August 9, 2022

TALWANI, D.J.

Plaintiff Michael Bush brings this action against Defendants Acton-Boxborough Regional School District ("School District") and its Superintendent, Peter Light, after Bush was barred from playing in adult league games because of his non-compliance with a mask requirement imposed by the School District during the COVID-19 pandemic. In Count I and II, Bush alleges that the School District violated Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. In Count III, Bush seeks recovery under 42 U.S.C. § 1983 for Defendants' alleged violation of his rights and under 42 U.S.C. §§ 1983 and 1985 for Defendants' alleged conspiracy to deprive him of his rights. Now pending before the court is Defendants' Motion to Dismiss [Doc. No. 13] for failure to state a claim. For the reasons that follow the Defendants' Motion to Dismiss [Doc. No. 13] is GRANTED.

I. **Factual Background as Alleged in the Complaint**

After a hiatus from early 2020 to September 2021 due to COVID-19, personnel at the School District's Community Education program announced the resumption of adult volleyball

classes and the mandatory usage of face masks by all participants. Compl. ¶¶ 5-6, 24 [Doc. No. 1]. Bush registered for classes scheduled to begin September 21, 2021. Id. at ¶ 12. On August 27, 2021, Bush sent the School District a notice and demand letter, objecting to the mask requirement and requesting that the policy be rescinded, in part, because it was "medically inappropriate" for him to wear a mask. Notice of Claim, Ex. 2, 4 [Doc. No. 1-4]. On August 31, 2021, Light sent a letter to Bush acknowledging receipt of his letter, indicating that the mask requirement would remain in place, and providing Bush with the option to receive a refund of his registration fees if he was uncomfortable with the requirement. Light Letter, Ex. 3 [Doc. No. 1-5]. On September 17, 2021, Bush's counsel sent a letter to Light reasserting Bush's demand that he be exempt from the mask mandate because of his medical needs or, alternatively, requesting a meet and confer take place prior to litigation commencing. September 17, 2021 Letter, Ex. 4 [Doc. No. 1-6]. On or about September 20, 2021, Light emailed Bush requesting documentation regarding his medical condition. Compl. ¶ 21; Ex. 5 [Doc Nos. 1, 1-7]. Around this time, Defendants offered Bush the option of using a face shield as a face covering instead of a face mask. Compl. ¶ 23 [Doc. No. 1]. On September 21, 2021, Light and Erin O-Brien Bettez, another School District employee, barred Bush from entering and participating in the adult volleyball class. Id. at ¶ 24.

## II. Standard of Review

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion

to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

"Exhibits attached to the complaint are properly considered part of the pleading for all purposes, including Rule 12(b)(6)." Trans-Spec Truck Service, Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008) (internal citations and quotations omitted).

**III. Discussion**

    A.    *Claims Under Title II the Americans with Disabilities Act (Count I and II)[1]*

"Congress enacted Title II of the ADA to combat discrimination by governmental entities in the operation of public services, programs, and activities." Toledo v. Sanchez, 454 F.3d 24, 30 (1st Cir. 2006). "It provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" Id. at 30-31 (quoting 42 U.S.C. § 12132). "The statute authorizes private suits against public entities to enforce its provisions." Id. (citing 42 U.S.C. § 12133) (emphasis added).[2]

---

[1] Count I alleges "de jure disability," based on Plaintiff's claim that "his physician has specifically advised against the wearing of face masks in consultation with, and in review of, the Plaintiff's medical status." Compl. ¶ 47 [Doc. No. 1]. Count II alleges "de facto disability" which Plaintiff describes as "[t]he [School] District's mask policy . . . creat[ing] the condition leading to the bar to access." Id. at ¶ 55. The court addresses both Counts together.

[2] At the hearing on the motion, the parties agreed that Counts I and II cannot be brought against Light.

3

To state a claim under Title II of the ADA, a plaintiff must allege facts showing "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." Parker v. Universidad de Puerto Rico, 225 F.3d 1, 5 (1st Cir. 2000). A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). In turn, the term "public entity" includes "any State or local government" as well as "any department, agency, special purpose district, or other instrumentality of a State or States or local government." Id. § 12131(1).

1.  Disability Within the Meaning of the ADA

"Not all physical impairments rise to the level of disability under the ADA." Lebron–Torres v. Whitehall Laboratories, 251 F.3d 236, 239 (1st Cir. 2001) (citing Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 565-66 (1999)). A disability for purposes of the ADA is "a physical or mental impairment that substantially limits one or more major life activities . . ." 42 U.S.C. § 12102(1)(A); 28 C.F.R. § 35.108. In general, major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). To survive a motion to dismiss, a plaintiff must allege facts supporting a disability as defined by the ADA. See e.g., Brodsky v. New England Sch. of L., 617 F. Supp.

2d 1, 5 (D. Mass. 2009) (denying motion to dismiss because plaintiff has "at least alleged a disability that substantially limits his ability to learn").

Bush contends that the notice and demand letters sufficiently alerted the Defendants that the face mask policies of Community Education and the School District would preclude Bush's participation in the volleyball classes due to his medical disability. Compl. ¶ 16 [Doc. No. 1]. Bush, however, does not include in the Complaint [Doc. No. 1] any factual allegations that he has an impairment that substantially limits any major life activities. Nor does his September 15, 2021 doctor's note state facts supporting a disability for the purposes of the ADA. That note asserts that his doctor has "found him to have contraindications to mask wearing for a private medical condition," Doctor's Note, Ex. 7 [Doc. No 1-9], but includes no statement as to the nature of Bush's alleged impairment or facts suggesting that the alleged impairment "substantially limits one or more major life activities . . ." 42 U.S.C. § 12102(1)(A); 28 C.F.R. § 35.108.[3] On September 20, 2021, Light requested that Bush provide "documentation regarding [his] condition and its impact on [his] ability to wear a mask," and nothing in the Complaint [Doc. No. 1] indicates that Bush responded to this request. September 20, 2021 Letter, Ex 5 [Doc. No. 1-7].

Even now, the court is unclear as to what disability Bush alleges to have. Indeed, the Complaint [Doc. No. 1] asserts that Bush has no impairment at all within the meaning of the ADA, stating that "Plaintiff had been fully able to participate in the adult volleyball program prior to the imposition [of the mask mandate] without the need for medical accommodation . . ." Compl. ¶ 54 [Doc. No. 1]. While Bush "is not required to make [] a showing at the pleading

---

[3] The Complaint [Doc. No. 1] does not allege that this letter, addressed "To: Whom It May Concern," was provided to the School District.

stage [that his disability substantially limits a life activity] and his failure to allege other manifestations of his disability does not automatically foreclose his ADA claim," Brodsky, 617 F. Supp. 2d at 5, Bush must allege a disability that "substantially limits one or more major life activities" for an actionable ADA claim. 42 U.S.C. § 12102(1)(A). As Bush has failed to do so, dismissal is proper as to Count I and II.[4]

        2.        Reasonable Accommodation Under The ADA

Even if Bush had sufficiently alleged a disability under the ADA, his claim would still fail because his allegation that Defendants did not provide a reasonable accommodation is conclusory.[5] Federal regulations implementing Title II require public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i).

In this case, Defendants provided Bush with the option of wearing a face shield instead of a face a mask in response to his objections. Compl. ¶ 23 [Doc. No. 1]. Taking all inferences in Bush's favor, the court finds that Defendants' offer that Bush wear a face mask contradicts Bush's conclusory allegations that Defendants did not "engage in serious or meaningful communication about reasonable accommodation." Id. Bush cannot allege that Defendants did not provide a reasonable accommodation simply because they did not provide the

---

[4] The court does not reach the second and third prong of the ADA claim analysis to determine whether Bush has sufficiently alleged that he was excluded from participation in the volleyball classes and that such exclusion was because of his disability.

[5] The court makes no determination as to whether "legitimate safety requirements necessary for the safe operation of" Defendants' volleyball classes superseded Defendants' obligation to provide reasonable accommodation. 28 C.F.R. § 35.130(h).

6

accommodations he requested—an outright exemption from the mask mandate. Accordingly, dismissal is also proper as to Count I and II because Bush has failed to allege that Defendants did not offer a reasonable accommodation.

B.  *Claims Under 42 U.S.C. §§ 1983 & 1985 (Count III)*

Bush alleges that the School District and Light, in his official capacity as Superintendent and in his individual capacity, violated 42 U.S.C. §§ 1983 and 1985 by depriving Bush of his rights under the ADA and engaging in a civil conspiracy to violate his civil rights.[6] Defendants contend that Light is entitled to qualified immunity as to Bush's claims against him in his official capacity and that Bush fails to allege an underlying violation or a conspiracy for his claim under 42 U.S.C. § 1983 and 1985.

1.  Qualified Immunity as to Superintendent Light for Count III

"Qualified immunity protects government officials from trial and monetary liability unless the pleaded facts establish '(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" Marrero-Mendez v. Calixto-Rodriguez, 830 F.3d 38, 43 (1st Cir. 2016) (quoting Ashcroft v. al–Kidd, 563 U.S. 731, 735 (2011)). "If either of the two prongs is not met—i.e., if the facts do not show a constitutional violation or the right in question was not clearly established—the officer is immune. Either prong may be addressed first, depending on 'the circumstances in the particular case at hand.'" Id. (quoting Pearson v. Callahan, 555 U.S. 223, 236 (2009)).

---

[6] The complaint also references the "right to free association of the First Amendment" to the United States Constitution. Compl. ¶ 68 [Doc. No. 1]. Plaintiff's Opposition [Doc. No. 17] to the motion to dismiss makes no mention of rights under the First Amendment, and at the hearing on the motion, Plaintiff stated that the civil rights at issue all arise out of his disability. Accordingly, the court treats any claim deriving from the First Amendment as waived.

7

Bush contends that Light was "made aware in writing that he was violating [Bush's] civil rights" by not permitting him to participate without wearing a mask in the adult league. Pl.'s Opp'n [Doc. No. 17]. However, as discussed above, the complaint does not sufficiently allege that Bush's rights were in fact violated let alone that a right was clearly established.[7] Accordingly, taking all of Bush's allegations in the complaint as true, the court finds that Light is entitled to qualified immunity for claims against him in his official capacity in Count III.

2. Allegation of ADA Violation as the Basis for Count III

To the extent that Count III relies on a violation of Bush's rights under the ADA, the claim fails for the reasons discussed above. Count III also fails because neither § 1983 nor § 1985 provides a remedy for ADA violations. See D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 44 (1st Cir. 2012) ("[W]e have already explained that § 1983 does not provide a remedy either for IDEA violations or for Rehabilitation Act or ADA violations. We see no reason why § 1985 should be any different" (internal citations omitted)).

3. Allegation of Conspiracy Under 42 U.S.C §§ 1983 & 1985 as the Basis for Count III

With respect to §§ 1983 and 1985, "[b]oth statutes provide remedies for violations of rights created by other sources of law, with § 1983 supplying a private right of action against a person who, under color of state law, deprives another of rights secured by the Constitution or by federal law, see 42 U.S.C. § 1983, and § 1985, among other things, supplying the same against

---

[7] Bush's reliance on Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin., 142 S. Ct. 661, 665 (2022) and Desrosiers v. Governor, 486 Mass. 369, 372, 158 N.E.3d 827 (2020) is misplaced where the legal question here is whether Light violated Bush's clearly established constitutional or statutory right, not whether Defendants exceeded their authority in implementing the mask policy.

8

two or more persons who conspire to deprive another 'of equal protection of the laws, or of equal privileges and immunities under the law.'" Id. at 44 (quoting 42 U.S.C. § 1985(3)).

In order to establish the existence of a conspiracy, a plaintiff must allege that "a combination of two or more persons act[ed] in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." Diaz v. Devlin, 229 F. Supp. 3d 101, 111 (D. Mass. 2017) (quoting Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir. 2008). "Where the claim is brought pursuant to Section 1983 for violation of the plaintiff's civil rights, the plaintiff must also [allege] that the conspiracy resulted in 'an actual abridgement of some federally-secured right.'" Id. (quoting Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001)). "A conspiracy may be a 'matter of inference[.]'" Id. (quoting Estate of Bennett, 548 F.3d at 178) (alterations in original). "However, a claim of conspiracy to deprive a plaintiff of civil rights will not survive a motion to dismiss if it makes conclusory allegations without making supporting factual assertions." Id. (citing Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977)).

Similarly, "[t]o plead an actionable claim under this [§ 1985(3)], [the plaintiff] must allege the existence of a conspiracy, allege that the purpose of the conspiracy is 'to deprive the plaintiff of the equal protection of the laws,' describe at least one overt act in furtherance of the conspiracy, and 'show either injury to person or property, or a deprivation of a constitutionally protected right.'" Alston v. Spiegel, 988 F.3d 564, 577 (1st Cir. 2021) (quoting Pérez-Sánchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008)). "To plead such a conspiracy, a plaintiff 'must plausibly allege facts indicating an agreement among the conspirators to deprive the plaintiff of h[is] civil rights.'" Id. at 577-78 (quoting Parker v. Landry, 935 F.3d 9, 18 (1st Cir.

2019) (alterations in original). "When direct evidence of such an agreement is unavailable, 'the plaintiff must plead plausible factual allegations sufficient to support a reasonable inference that such an agreement was made.'" Id. at 578 (quoting Parker, 935 F.3d at 18). "Vague and conclusory allegations about persons working together, with scant specifics as to the nature of their joint effort or the formation of their agreement, will not suffice to defeat a motion to dismiss." Id. (citing Parker, 935 F.3d at 18).

Bush alleges that Bettez "reviewed and approved a draft of an email message that volleyball instructor David Liu proposed to send to volleyball class registrants which outlined penalties for participants who do not comply with the [mask] [p]olicy" and "advocated for even harsher penalties against those who do not comply with the [] policy." Compl. ¶ 22 [Doc. No. 1]. Bush further alleges that "Defendant Peter Light and Erin O'Brien Bettez barred [him] from entry and participation in the adult volleyball class," id. at ¶ 24, while "not subject[ing] others entering the building . . . to equivalent discrimination or treatment," id. at ¶ 25. Such allegations do not sufficiently allege that a deprivation of Bush's constitutional or federal right occurred.[8] Accordingly, Count III is dismissed to the extent it claims a conspiracy in violation of §§ 1983 and 1985.

---

[8] To the extent that Bush's complaint can be construed to allege a conspiracy between Light in his individual capacity and the School District, the claim also fails as a matter of law because Light was acting within the scope and course of his employment as Superintendent and, thus, the School District and Light are considered one party. See Wentworth Precious Metals, LLC v. City of Everett, 2013 WL 441094, at *14 (D. Mass. Feb. 4, 2013) ("When these employees acted in the course of their employment, they acted on behalf of the [employer], and a conspiracy of one fails to state a claim").

### IV.     Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss [Doc. No. 13] is GRANTED.[9]

IT IS SO ORDERED.

August 9, 2022                                                          /s/ Indira Talwani
                                                                        United States District Judge

---

[9] At the hearing on the motion to dismiss, the court indicated that it would consider a motion for leave to amend the complaint. Any such motion must be filed within fourteen days of this order and include a proposed amended complaint. In the absence of such a filing, the court will enter an Order of Dismissal closing the case.