UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MICHAEL BUSH, et. al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 21-cv-11794-ADB |
| | * | |
| LINDA FANTASIA, et. al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

**MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

BURROUGHS, D.J.

Plaintiffs[1] brought this suit to challenge the constitutionality of mask mandates

implemented by the Town of Carlisle Board of Health ("Carlisle BOH" or "BOH") and the

Gleason Public Library ("Gleason Library" or "Library") to prevent the spread of the COVID-19

virus.  Before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6).  [ECF No. 21].  Plaintiffs opposed the motion, and the parties then filed

additional briefing, supplemental notices of authority, and responses thereto.  See [ECF Nos. 23,

26, 28, 31, 32].  For the reasons set forth below, Defendants' motion, [ECF No. 21], is

GRANTED.

I.      **BACKGROUND**

The following facts are taken primarily from the complaint, [ECF No. 1 ("Compl.")], the

factual allegations of which are assumed to be true when considering a motion to dismiss, Ruivo

---

[1] Plaintiffs are Michael Bush, Linda Taylor, Lisa Tiernan, Kate Henderson, Robert Egri, Katalin
Egri, Anita Opitz, Monica Granfield, Ann Linsey Hurley, Ian Sampson, Susan Provenzano, and
Joseph Provenzano.

v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).  As it may on a motion to dismiss, the Court has also considered "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice."  Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (alteration in original) (quoting In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003)).

On August 25, 2021, the Carlisle BOH unanimously voted to adopt an indoor face mask mandate to prevent the spread of COVID-19 pursuant to their authority under Mass. Gen. Laws ch. 111, §§ 31, 104.  [Compl. at 9, 13]; see also [ECF No. 1-2 at 7].  The vote was "[i]n response to the recent increase in positive COVID-19 cases in Carlisle and throughout Middlesex County, including break-through cases among those who have been fully vaccinated."  [ECF No. 1-2 at 7].  The mandate required face masks to be worn in "all indoor public spaces, or private spaces open to the public within the Town of Carlisle . . . ." [Compl. at 9, 13; ECF 1-2 at 7].  Individuals who are "unable to wear a face mask due to a medical condition or disability . . . ." were excluded from the mandate.  [ECF 1-2 at 7].  In the face of the ongoing pandemic, the BOH renewed the mask mandate at public meetings held on October 6, 2021, November 17, 2021, and December 15, 2021.  See [ECF No. 22 at 4–5; Compl. at 9].

Similarly, "throughout much of 2020 and 2021," the Director of the Gleason Library, Martha Feeney-Patten ("Feeney-Patten"), also implemented a face mask requirement for Library visitors aged two and up "in consideration of . . . high usage [of the library] by as-yet-unvaccinated children and medically vulnerable individuals."  [Compl. at 10; ECF No. 1-2 at 4].

Starting in October 2020 and continuing into 2021, Plaintiff Michael Bush contacted Carlisle BOH Health Agent Linda Fantasia ("Fantasia") and Feeney-Patten to protest the implementation of the mask mandates.  [Compl. at 12; ECF No. 1-2 at 1–3].  He alleged that the

mandates were unwarranted, that "the town officials' messaging about face masks had contributed to harassment and discrimination against people for whom face masks are medically inappropriate[,]" and that he had been subjected to such discrimination himself due to the published face mask policies. [Id.]. Plaintiff Monica Granfield also alleges that, in October 2021, Library staff asked her to wear a face mask in accordance with the policy. [Compl. at 14]. The complaint does not allege any other instances in which any Plaintiff was ordered to comply with a mask mandate or denied access to a facility due to the mask mandates. Following up on his emails, Bush, with some of the other Plaintiffs co-signing, sent "Notice and Demand Letters" to Fantasia, Feeney-Patten, and Town Administrator Timothy Goddard ("Goddard"), which alleged that the mask mandates violated both federal and state law, were ineffective tools for preventing the spread of COVID-19, and that masks themselves were "harmful." [ECF No. 1-2 at 8–26; Compl. at 13].

Ultimately, Plaintiffs, proceeding *pro se*, filed the instant action on November 4, 2021. See [Compl.]. They named as defendants the Town of Carlisle ("Carlisle"), Fantasia, Feeney-Patten, and Goddard, as well as Carlisle BOH Chair Anthony Mariano, and BOH Members Catherine Galligan, Jean Jasaitis Barry, Patrick Collins, and David Erickson. [Id.]. Put simply, Plaintiffs argue that Defendants did not have the authority to institute the mask mandates and that they violated Plaintiffs' rights under federal, state, and even international law by doing so. [Id. at 7, 17]. Plaintiffs request the Court declare the face mask policies "unlawful and void" and "[o]rder that Defendants henceforth refrain from uninformed non-consensual medical experimentation and other religious or medical discrimination" and also ask for compensatory and punitive damages. [Id. at 17].

While this motion was pending, on February 23, 2022, the BOH rescinded the mask mandate at issue and replaced it with a mask advisory, and, on March 8, 2022, the Carlisle Select Board voted to support the BOH's decision.  [ECF No. 28].  The Gleason Library has also adopted a similar policy, which does not require guests to wear masks but advises that masks are "strongly recommended[.]"  [ECF No. 32 ¶ 5; ECF No. 32-1].[2]

## II.        LEGAL STANDARD

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in the plaintiff's favor.  See Gilbert v. City of Chicopee, 915 F.3d 74, 76, 80 (1st Cir. 2019).  "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions."  Bell Atl. Corp. v.

---

[2] The Court will address mootness briefly.  Plaintiffs' request that the Court declare the mandates unlawful, and/or to enjoin their enforcement, became moot once the mast mandates were rescinded.  Plaintiffs are no longer subject to the mandates and, as such, a ruling from this Court would not have any effect on their legal interests.  See, e.g., City of Lynn v. Murrell, 185 N.E.3d 912, 916 (2022) (plaintiff's challenge to COVID-19 regulations were mooted upon expiration of the orders); Bos. Bit Labs, Inc. v. Baker, 11 F.4th 3, 9 (1st Cir. 2021) (same); see also Medas-King v. Ocean Breeze Athletic Complex, No. 21-cv-6424, 2022 WL 3019931, at *2 (E.D.N.Y. July 30, 2022) (constitutional challenges to vaccine requirement found moot once order rescinded).

Nor do the facts of this case invoke any exception to mootness as Plaintiffs have argued.  See [ECF No. 31 at 5–6].  There is no evidence that Defendants "voluntarily ceased" conduct in order to avoid review, or that the conduct is "capable of repetition, yet evade[s] review."  Id.  In contrast, there is ample evidence in the record that Defendants' reasons for rescinding the mandates were due to changes in circumstances of the pandemic entirely unrelated to this litigation and that pandemic measures, like mask mandates and vaccination requirements, have proven to be reviewable by the courts time and again.  See Bos. Bit Labs, Inc., 11 F.4th at 10; Resurrection Sch. v. Hertel, 35 F.4th 524, 528–29 (6th Cir. 2022); Fortuna v. Town of Winslow, No. 21-cv-00248, 2022 WL 2117717, at *2 (D. Me. June 13, 2022).

Nevertheless, Plaintiffs' claims for damages for injuries incurred under the past mandates remain reviewable.

Twombly, 550 U.S. 544, 555 (2007).  The alleged facts must be sufficient to "state a claim to relief that is plausible on its face."  Id. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability."  Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Id. at 44 (quoting Iqbal, 556 U.S. at 679).  "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)).  "The plausibility standard invites a two-step pavane."  A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citing Grajales, 682 F.3d at 45).  First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."  Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  Second, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (quoting Morales-Cruz, 676 F.3d at 224).

Because Plaintiffs are proceeding pro se, the Court must generously construe the arguments in their complaint and briefing.  Bahiakina v. U.S. Postal Serv., 102 F. Supp. 3d 369, 371 (D. Mass. 2015) ("[A] document filed pro se is to be liberally construed . . . ." (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007))).  However, a pro se litigant still must comply with procedural and substantive law.  Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).  Dismissal of a pro se complaint is appropriate when the complaint fails to state an actionable

claim.  Muller v. Bedford VA Admin. Hosp., No. 11-cv-10510, 2013 WL 702766, at *3 (D.

Mass. Feb. 25, 2013) (citing Overton v. Torruella, 183 F. Supp. 2d 295, 303 (D. Mass. 2001)).

## III.    DISCUSSION

Defendants assert that dismissal of the complaint is warranted because the BOH had the

statutory authority to implement the mandates, and that Plaintiffs have failed to state a claim

under any count of their complaint.[3]  See [ECF Nos. 22, 23].

---

[3] Defendants also contend that Plaintiffs lack standing to challenge the Library mandate
specifically because no Plaintiff alleges that they were barred from the Gleason Library for
failing to wear a mask at any time during which *only* the Library had an active mask mandate.
[ECF No. 22 at 10 n. 12].  Defendants assert that when, on October 20, 2021, Plaintiff Granfield
was directed to wear a mask in the Library, this was done according to the Carlisle BOH mask
mandate already in place.  [Id.].  As the Court understands it, Defendants are arguing that
Plaintiffs have failed to plead that Granfield's injury was "fairly traceable" to the Library's mask
policy, but instead attributable to the overarching town policy.  Spokeo, Inc. v. Robins, 578 U.S.
330, 338, as revised (May 24, 2016) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61
(1992)).  Plaintiffs respond that they were injured by the Library's mandate before the BOH
mandate was in effect because "several of us have refrained from even entering the library for
fear of being harassed or discriminated against."  [ECF No. 23 at 13].  Because the BOH
mandate was consistent with the Library mandate, the Court is not inclined to find that the injury
was not "fairly traceable" to the Library's mandate.  See Rothstein v. UBS AG, 708 F.3d 82, 92
(2d Cir. 2013) (an "intervening cause of the plaintiff's injury . . . is not necessarily a basis for
finding that the injury is not 'fairly traceable' to the acts of the defendant).

No other Plaintiff, however, has specifically alleged that they were denied access to any facility
because of the mask mandates or that they were forced to wear a mask.  Thus, the Court is not
convinced that each Plaintiff has alleged the concrete and particularized injury necessary for
Article III standing, rather than a speculative injury.  See, e.g., Bechade v. Baker, No. 20-cv-
11122, 2020 WL 5665554, at *2 (D. Mass. Sept. 23, 2020) (finding that plaintiff's complaint
was "nothing more" than a policy disagreement with the mask requirement where she did not
allege that she had "personally been forced to wear a mask" and "thus [did] not establish that she
suffered any concrete or particularized injury with respect to the mask requirement"); Health
Freedom Def. Fund, Inc. v. City of Hailey, No. 21-cv-00389, 2022 WL 716789, at *5 (D. Idaho
Mar. 10, 2022) ("mere objection" to City mask mandate "does not qualify as a concrete or
particularized injury"); Carlone v. Lamont, 21-cv-00871, 2021 WL 5049455, at *2–3 (2d Cir.
Nov. 1, 2021) (holding that a plaintiff who challenged Connecticut's mask mandate did not have
standing simply by virtue of being "subject" to that mandate, since his "complaint d[id] not state
that [he] ha[d] ever actually been required to wear a mask or ha[d] been subject to enforcement
of the mask mandate").

A.       **Statutory Grounds for the Defendants' Mask Mandates**

As a preliminary matter, the Court finds that the Carlisle BOH had the statutory authority

to issue the mask mandates.  Mass. Gen. Law ch. 111, § 31 provides that "[b]oards of health may

make reasonable health regulations" and further states that

> If the board of health determines that an emergency exists, the board or its
> authorized agent, acting in accordance with section 30 of chapter 111, may, without
> notice of hearing, issue an order reciting the existence of the emergency and
> requiring that such action be taken as the board of health deems necessary to
> address the emergency.

Mass. Gen. Laws ch. 111, § 31.

Mass. Gen. Laws ch. 111, § 104 adds that "[i]f a disease dangerous to the public

health exists in a town, the selectmen and board of health shall use all possible care to

prevent the spread of the infection and may give public notice of infected places by such

means as in their judgment may be most effectual for the common safety."

The issuance of a mask mandate during the COVID-19 pandemic was a decision

properly made under this statutory authority.  Plaintiffs' attempts to convince the Court

that this statutory authority is too limited to include the instant circumstances (*i.e.*, that

Section 31 does not "pertain to infectious diseases transmitted between persons" or

include "any authority to mandate personal usage of medical devices[,]" or that the

phrase "all possible care" somehow does not suggest the use of "all possible means" to

prevent the spread of disease) are entirely unpersuasive.  [ECF No. 23 at 9–10].  Because

these are unambiguous statutes that contain no such limitations, the Court will not credit

Plaintiffs' wholly unsupported limitations to the statutory language.

---

Nevertheless, given that one of the Plaintiffs has alleged an injury sufficient to confer standing,
however tenuously, and that Defendants have not offered any other challenge to Plaintiffs'
standing, the Court will reach the merits of each claim.

Indeed, case law instructs this Court to do the opposite.  Courts in this state have repeatedly held that § 31 grants boards of health "plenary power to promulgate reasonable health regulations that are general in application and take effect prospectively[,]" Independence Park, Inc. v. Bd. of Health of Barnstable, 403 Mass. 477, 480 (1988), that "[h]ealth regulations have a strong presumption of validity, and, when assessing a regulation's 'reasonableness,' all rational presumptions are made in favor of the validity of the regulation[,]" see Tri-Nel Mgmt., Inc. v. Bd. of Health of Barnstable, 741 N.E.2d 37, 41 (2001) (citations omitted), and that "the Legislature has granted the boards particular authority regarding health emergencies in general, and outbreaks of infectious diseases in particular[,]" Avila v. Ojikutu, No. 21-J-620, 2022 WL 480005, at *3 (Mass. App. Ct. Feb. 14, 2022), vacated on other grounds, No. 2022-P-0155, 2022 WL 2288672 (Mass. App. Ct. June 22, 2022).  State courts have taken the same approach in interpreting comparable statutory authority as applied to pandemic-related regulations.  In Family Freedom Endeavor, Inc. v. Riley, No. 2179-cv-00494 (Mass. Superior Ct., Nov. 16, 2021), plaintiffs argued that Massachusetts state entities did not have the authority to implement mask mandates in schools because the applicable state laws did not explicitly grant them such authority.  The court rejected Plaintiffs' narrow reading of the law, holding that the relevant statute, which provided that "[t]he [education] board shall establish standards to ensure that every student shall attend classes in a safe environment" and "shall establish such other policies as it deems necessary to fulfill the purposes of this chapter," "unambiguously evinces a legislative intent that the State defendants ensure that students attend classes in a healthy and safe educational

environment" and that "[t]he statute's intended applicability to any health risks . . . is common sense." Id. at *2–4.

Here, too, the Court finds that it is obvious that §§ 31 and 104 provide the authority to issue reasonable regulations, like mask mandates, during an epidemic caused by a novel and highly contagious infectious disease. Indeed, the language that "[b]oards of health may make reasonable health regulations"; "that such action be taken as the board of health deems necessary to address the emergency"; and that the board "shall use all possible care to prevent the spread of the infection" are arguably even broader than those discussed in Family Freedom. The Plaintiffs have not demonstrated otherwise. Certainly, the Court is not persuaded by Plaintiffs' colorful, and verging on absurd, suggestions that its interpretation of the statutes permit local boards of health to act barbarously, including by "beheading and cremating inhabitants suspected of being infected; [and] requiring persons accused of being infectious to wear a conspicuous sign to that effect on their front and back when outside their home[.]" [ECF No. 23 at 10].

Plaintiffs' argument that even if the BOH had the authority to act as it did, it exceeded that authority because COVID-19 did not rise to the level of "a disease dangerous to public health" sufficient to justify a mask mandate under § 104 is equally illogical. In Family Freedom, the court noted that

> The Centers for Disease Control (CDC) has reported that over 720,000 persons in the United States have died from COVID-19. The Massachusetts Department of Public Health (DPH) has reported that over 18,000 people in Massachusetts had died of COVID-19 as of October 2021 . . . . Over the course of summer 2021 . . . the Delta variant of COVID-19 arrived in Massachusetts and the number of COVID-19 cases began rising again. In July 2021, the seven-day COVID-19 case average in Massachusetts was 223, but by August 18, that figure had climbed to 1,237.[4]

---

[4] The Court may take judicial notice of facts from the CDC. See Fortuna, 2022 WL 2117717, at *3–4.

Family Freedom, No. 2179-cv-00494, at *1; see also [ECF No. 22 at 3–4].

In light of these facts, Plaintiffs' denial of the rationale for face masks is misguided at best.  Defendants responsibly relied on guidance from state and federal officials, including "overwhelming medical evidence" regarding the utility of face masks in reducing the spread of COVID-19.  [ECF No. 22 at 3–4, 7 (describing CDC recommendation); ECF No. 26 at 3–4].  Nothing in the record suggests that Defendants' actions, whether it be the BOH mask mandate or the Library mask mandate, were unreasonable or unsupported.  The fact that there was only one reported COVID-19-related death in Carlisle around the time the mandate was implemented does not alter this conclusion, see [ECF No. 23 at 5; ECF No. 23-3 at 2–3], where the BOH was being confronted with state data reporting an uptick in breakthrough cases and increased hospitalizations due to the Delta variant, even in places with high vaccination rates, see [ECF No. 22 at 3–4].

For these reasons, the Court finds that Defendants acted well within their statutory authority when they implemented the mask mandates.

**B.    Constitutional Claims (Count II)**

Plaintiffs also bring a panoply of constitutional challenges to mask mandates.  They all fail.

The complaint originally alleged a claim only under the Equal Protection Clause of the Fourteenth Amendment, [ECF No. 1 at 7], but in their opposition to Defendants' motion to dismiss, Plaintiffs stated that they intended to assert claims under the Due Process Clause of the Fourteenth Amendment and the First Amendment as well, [ECF No. 23 at 15].  While amending the complaint would be the appropriate method to add theories of liability, the Court will

consider all suggested claims given Plaintiffs' *pro se* status and the clear futility of amending the complaint to properly encompass these theories.

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citations omitted).  The statute "supplies a private right of action against a person who, under color of state law, deprives another of 'any rights, privileges, or immunities secured by the Constitution and [federal] laws.'" Gray v. Cummings, 917 F.3d 1, 7 (1st Cir. 2019) (alteration in original) (quoting 42 U.S.C. § 1983).  "[T]o state a claim under § 1983, a plaintiff must allege (1) the violation of a right protected by the Constitution or laws of the United States and (2) that the perpetrator of the violation was acting under color of law." Cruz–Erazo v. Rivera-Montañez, 212 F.3d 617, 621 (1st Cir. 2000).

With regard to the appropriate standard of review, Plaintiffs insist the Court apply strict scrutiny in its review of the mask mandates, [ECF No. 23 at 12, 15–16], while Defendants ask the Court to apply rational basis review, [ECF No. 22 at 12–13].  While the parties do not discuss it, courts have reviewed COVID-19 regulations either under these traditional tiers of scrutiny or under the test set forth in Jacobson v. Massachusetts, 197 U.S. 11 (1905), which preexisted the tiers of scrutiny and articulated a highly deferential standard for laws enacted to address public health crises.  Jacobson remains good law, but its holding has been narrowed as courts have been forced to grapple with how it interacts with the tiers of scrutiny.  See Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 70–72 (2020) (Gorsuch, J., concurring); Fortuna, 2022 WL 2117717, at *13; Denis v. Ige, 538 F. Supp. 3d 1063, 1076 (D. Haw. 2021); Hopkins Hawley LLC v. Cuomo, 518 F. Supp. 3d 705, 712 (S.D.N.Y. 2021).  Here, however, the Court need not resolve whether to analyze the claims under Jacobson or the traditional tiers of scrutiny because

Plaintiffs' constitutional claims fail under either.  See Let Them Play MN v. Walz, 517 F. Supp.

3d 870, 880 (D. Minn. Feb. 8, 2021) ("[I]f Jacobson does establish a different standard of review

that applies only during a public-health crisis, that standard would certainly be more deferential

than the typical constitutional analysis.").

        1.     First Amendment

Plaintiffs assert that the mask mandates violated their right to freedom of religion under

the Free Exercise clause of the First Amendment because they "have sincerely held religious

beliefs that proscribe our wearing face masks and/or submitting to coerced medical

devices/products such as face masks."  [ECF No. 23 at 15].

Plaintiffs' allegations do not permit the court to infer that mask mandates placed a

substantial burden on the exercise of their religion.  As an initial matter, Plaintiffs have failed to

allege the basic elements of a free exercise claim.  "A plaintiff alleging a Free Exercise violation

must show that a government action has a coercive effect on her religious practice."  Perrier-

Bilbo v. United States, 954 F.3d 413, 429 (1st Cir. 2020), cert. denied, 141 S. Ct. 818 (2020)

(quoting Parker v. Hurley, 514 F.3d 87, 103 (1st Cir. 2008)).  Plaintiffs do not identify a

religious practice or explain the coercive effect the mask mandates had on that practice.  A mere

vague allegation that mask mandates violate their religion is not enough to survive even the most

a generous pleading standard.  Denis, 538 F. Supp. 3d at 1076.

Even assuming arguendo that Plaintiffs have sufficiently alleged a burden on their

exercise of religion, their claims would still fall.  The mask mandates were facially neutral and

generally applicable, i.e., they did not single out, or make any reference to, a religion or any

religious practice and applied equally to all, unlike the regulations at issue in Roman, 141 S. Ct.

at 66–67.  See, e.g., Does 1-6 v. Mills, 16 F.4th 20, 31–32 (1st Cir. 2021), cert. denied sub nom.

Does 1-3 v. Mills, 142 S. Ct. 1112 (2022) (distinguishing the regulations in Roman from a COVID-19 vaccine mandate for healthcare workers, which the First Circuit found to be facially neutral and generally applicable).  Beginning with the tiers of scrutiny, "a neutral, generally applicable regulatory law that compel[s] activity forbidden by an individual's religion withstands a Free Exercise challenge if there is a rational basis for the regulation."  Does 1-6 v. Mills, 566 F. Supp. 3d 34, 45 (D. Me. 2021).

This Court, in line with so many others around the country, finds that these types of mask mandates easily withstand rational basis review.  Preventing the spread of COVID-19 is a legitimate government interest.  Indeed, the Supreme Court has gone so far as to state that is "unquestionably a compelling" one.  Roman, 141 S. Ct. at 67, and the implementation of indoor mask mandates is indisputably rationally related to that interest.  See Delaney v. Baker, 511 F. Supp. 3d 55, 74 (D. Mass. 2021) (finding that Governor Charlie Baker's statewide mask mandate was facially neutral and generally applicable because it "burden[ed] the conduct of all residents, not exclusively conduct motivated by religious belief" and was "rationally related to the interest of stemming the spread of COVID-19"); Dr. T. v. Alexander-Scott, 579 F. Supp. 3d 271, 283–84 (D.R.I. Jan. 7, 2022), appeal dismissed sub nom. Dr. T. v. McKee, No. 22-1073, 2022 WL 2962029 (1st Cir. Apr. 13, 2022) (applying rational basis review and upholding COVID-19 vaccine requirement for healthcare workers).

Under these same facts, the mandates also withstand the far more deferential Jacobson review, which provides that, during a public health crisis, courts should only overturn state action when that action "lacks a 'real or substantial relation to the protection of the public health' or represents 'a plain, palpable invasion of rights secured by the fundamental law.'"  Calvary Chapel of Bangor v. Mills, 459 F. Supp. 3d 273, 284 (quoting Jacobson, 197 U.S. at 31 and

upholding Governor Baker's indoor mask mandate); see also Roman, 141 S. Ct. at 70 (Gorsuch,

J., concurring) (explaining that Jacobson is "essentially . . .  rational basis review").  Plaintiffs'

reliance on non-binding case law, U.S. Navy SEALs 1-26 v. Biden, 578 F. Supp. 3d 822 (N.D.

Tex. 2022), is unpersuasive, especially when that opinion has been called into question by other

courts, see Navy SEAL 1 v. Austin, No. 22-cv-0688, 2022 WL 1294486, at *9 (D.D.C. Apr. 29,

2022) (stating that the Northern District of Texas' finding that the military had no compelling or

even rational basis interest in the health of its troops was supported by "neither law or science").

Because Plaintiffs have neither alleged the preliminary elements of a free exercise claim

nor shown that the mask mandates were irrational measures in response to the COVID-19

epidemic, their free exercise claims must be dismissed.

Plaintiffs' vague allegation of an infringement of their right to peaceably assemble also

fails.  The right to freedom of assembly "has been largely subsumed into a broad right of

expressive association."  Gattineri v. Town of Lynnfield, No. 20-cv-11404, 2021 WL 3634148,

at *9 (D. Mass. Aug. 17, 2021).  "[T]he Court has recognized a right to associate for the purpose

of engaging in those activities protected by the First Amendment—speech, assembly, petition for

the redress of grievances, and the exercise of religion."  City of Dallas v. Stanglin, 490 U.S. 19,

24 (1989) (quoting Roberts v. U.S. Jaycees, 468 U.S. 609, 618 (1984)).  "To violate the

constitution, government action that interferes with such associational rights must 'affect in [a]

significant way the existing members' ability to carry out their various purposes.'"  Gattineri,

2021 WL 3634148, at *9 (quoting Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte, 481 U.S.

537, 548 (1987)).  Plaintiffs have alleged no facts to support the contention that the mask

mandates inferred with their rights to engage with activities protected by the First Amendment in

public places or to associate with others with shared ideals or beliefs.

2.    <u>Equal Protection</u>

Construing the complaint as generously as possible, it also asserts that the mask mandates created a religion-based class and subjected them to disparate treatment in violation of the Equal Protection Clause.  [Compl. at 7].  That claim, to the extent even made, is equally unlikely to succeed.  "When a free exercise challenge fails, any equal protection claims brought on the same grounds are subject only to rational-basis review."  <u>Mills</u>, 16 F.4th 20, 35; <u>see also</u> <u>Wirzburger v. Galvin</u>, 412 F.3d 271, 283 (1st Cir. 2005) (because the court found the provisions of the state constitution did not violate the Free Exercise Clause, the court applied rational basis scrutiny to the fundamental rights-based claim and found the regulations passed such review); <u>Lowe v. Mills</u>, No. 21-cv-00242, 2022 WL 3542187, at *14 (D. Me. Aug. 18, 2022) (challenge to vaccine mandate brought under Equal Protection Clause dismissed once the court found that the mandate did not violate the Free Exercise Clause).  Because the Court has determined that the mask mandates were rational, the Equal Protection claim is accordingly dismissed.

3.    <u>Substantive Due Process</u>

In a last-ditch effort to save their constitutional challenge, Plaintiffs, in their opposition to Defendants' motion, assert that they also intended to bring a Due Process challenge under the Fourteenth Amendment.  [ECF No. 23 at 15].  Such a claim also fails because Plaintiffs have not demonstrated that the mask mandates implicated a fundamental right or were an irrational response to COVID-19.

"In order to assert a valid substantive due process claim, [Plaintiffs] have to prove that they suffered the deprivation of an established life, liberty, or property interest, and that such deprivation occurred through governmental action that shocks the conscience[,]" <u>Clark v. Boscher</u>, 514 F.3d 107, 112 (1st Cir. 2008), or that such action was "legally irrational in that it is

not sufficiently keyed to any legitimate state interests[,]'" Collins v. Nuzzo, 244 F.3d 246, 250

(1st Cir. 2001) (quoting PFZ Props., Inc. v. Rodriguez, 928 F.2d 28, 31–32 (1st Cir. 1991)).

Once again construing the pleadings charitably, Plaintiffs assert that the mask mandates

violated their "fundamental liberty interests in medical autonomy[.]"  [ECF No. 23 at 16].

Courts, however, "have uniformly found that public mask mandates do not implicate

fundamental rights[.]"  Doe v. Franklin Square Union Free Sch. Dist., 568 F. Supp. 3d 270, 288

(E.D.N.Y. 2021), appeal withdrawn, No. 21-cv-2759, 2022 WL 1316221 (2d Cir. Mar. 17,

2022); see, e.g., Lloyd v. Sch. Bd. of Palm Beach Cnty., 570 F. Supp. 3d 1165, 1180 (S.D. Fla.

2021); Health Freedom Def. Fund, No. 21-cv-00389, 2022 WL 716789, at *8; see also Harris v.

Univ. of Mass., Lowell, 557 F. Supp. 3d 304, 312 (D. Mass. 2021), appeal dismissed, 43 F.4th

187 (1st Cir. 2022) (substantive due process challenge to vaccine mandate failed where plaintiffs

failed to identify a fundamental right).  This is because requiring individuals to wear cloth masks

does not amount to "compulsory bodily intrusion," Lloyd, 570 F. Supp. 3d at 1180, and is no

more a "medical treatment" "than requiring shoes in public places . . . or helmets while riding a

motorcycle," Franklin Square Union Free Sch. Dist., 568 F. Supp. 3d at 290; see also Gunter v.

N. Wasco Cnty. Sch. Dist. Bd. of Educ., 577 F. Supp. 3d 1141, 1156 (D. Or. 2021) (same).

Accordingly, because a fundamental right has not been implicated and the Court has

already concluded that the mask mandates were both reasonable and rationally related to a

compelling government interest, and certainly do not "shock the conscience," Plaintiffs' due

process claim cannot survive rational basis scrutiny or evaluation under the Jacobson standard.

### 4.    Qualified Immunity

Plaintiffs claim that their complaint is alleged against the individual Defendants in both

their individual and official capacities.  [Compl. at 11–12; ECF No. 23 at 16–17].  Defendants

respond that the individual Defendants are entitled to qualified immunity on the constitutional

claims asserted against them in their individual capacities.  [ECF No. 22 at 14–15].[5]  To the

extent Plaintiffs seek monetary damages from the individual Defendants for any constitutional

violations, those claims fail because the individual Defendants are protected by qualified

immunity.

"The Supreme Court has long established that, when sued in their individual capacities,

government officials are immune from damages claims unless '(1) they violated a federal

statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly

established at the time.'"  Eves v. LePage, 927 F.3d 575, 582–83 (1st Cir. 2019) (quoting District

of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018)).  Because the complaint fails to allege any

viable constitutional claims, the individual Defendants are entitled to qualified immunity.

## C.  Americans with Disabilities Act ("ADA") Claim (Count I)

Plaintiffs have abandoned their ADA claim against the Carlisle BOH because that policy

contained a carveout for medical exceptions, but they maintain that the Gleason Library's mask

mandate violated the ADA because it did not include such a carveout.  See [ECF No. 23 at 14;

Compl. at 7].

Title II of the ADA prohibits discrimination by governmental entities in the operation of

public services, programs, and activities.  See Buchanan v. Maine, 469 F.3d 158, 170 (1st Cir.

2006).  To prevail on a Title II claim, a plaintiff must show:

(1) that he is a qualified individual with a disability; (2) that he was either excluded
from participation in or denied the benefits of some public entity's services,
programs, or activities or was otherwise discriminated against; and (3) that such

---

[5] Defendants also argue that Plaintiffs have failed to state claims against Fantasia and Goddard
specifically because they did not participate in the BOH vote and are not decisionmakers, [ECF
No. 22 at 17–18], but the Court need not delve into this dispute as it dismisses Plaintiffs' claims
on other grounds.

exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

Buchanan, 469 F.3d at 170–71.

Plaintiffs have not alleged a plausible claim under Title II of the ADA.  First, Plaintiffs have failed to allege facts to show they are "disabled" within the mean of the ADA.  A disability is "a physical or mental impairment that substantially limits one or major life activities . . . ."  42 U.S.C. § 12102(1)(A); see also Carroll v. Xerox Corp., 294 F.3d 231, 238 (1st Cir. 2002).  As Defendants note, Plaintiff Bush alleges only that "'face masks are medically inappropriate for him to wear' . . . but identifies no physical or mental impairment that substantially limits one or more of his major life activities. The other eleven plaintiffs make no allegations of impairment whatsoever."  [ECF No. 22 at 11]; see [Compl. at 12].

Even if Plaintiffs had plausibly alleged that they were disabled within the meaning of the ADA, their claim still fails because they plead no facts that plausibly suggest that they were excluded from the Library or otherwise discriminated against by reason of this disability.

The Court also notes that the ADA allows public entities to consider whether even otherwise qualified applicants for accommodation pose a direct threat to the health and safety of others.  Theriault v. Flynn, 162 F.3d 46, 48 (1st Cir. 1998); see [ECF No. 22 at 11–12 (Defendants assert that "[t]he failure to wear face masks in indoor public places during the COVID-19 pandemic poses a significant risk to the health or safety of other visitors")].  And, finally, as Defendants note, any claims for individual liability that Plaintiffs purport to bring under Title II of the ADA automatically fail because the provision does not provide for individual liability claims.  Logie v. Mass. Bay Transp. Auth., 323 F. Supp. 3d 164, 177 (D. Mass. 2018).

### D.      Civil Rights Act Claim (Count IV)

Plaintiffs also attempt to bring a claim under the Civil Rights Act.

Title II of the Civil Rights Act provides that "[a]ll persons should be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin."  42 U.S.C. § 2000a(a).

> To state a *prima facie* case of discrimination under § 2000a, a plaintiff must plausibly plead that he: (1) is a member of a protected class; (2) attempted to exercise the right to full benefits and enjoyment of a place of public accommodations; (3) was denied those benefits and enjoyment; and (4) was treated less favorably than similarly situated persons who are not members of the protected class.

Drake v. Mitch Rosen Extraordinary Gunleather, LLC, No. 16-cv-00527, 2017 WL 1076396, at *2 (D.N.H. Jan. 17, 2017), R&R adopted, No. 16-cv-00527, 2017 WL 1066585 (D.N.H. Mar. 21, 2017) (citations omitted).  Plaintiffs assert that some of them have religious beliefs that prohibit them from wearing a mask, [ECF No. 23 at 18], but they fail to allege any facts that suggest that they were treated any differently than others who do not share their religious beliefs or that Defendants' actions were motivated by their religious beliefs.  In fact, the complaint says that Defendants treated everyone the same and that everyone was subject to the mask mandates.  Therefore, Plaintiffs have failed to allege sufficient facts to support this claim.

The Court also notes that Title II includes a notice provision which bars plaintiffs from bringing such an action "before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority[.]" 42 U.S.C. § 2000a-3(c).  As will be discussed further below, Plaintiffs failed to properly notify the appropriate authority before bringing their claim under Title II.  See Manning v. Whole Foods Mkt. Grp., Inc., No. 21-cv-10833, 2022 WL 194999, at *6 (D. Mass. Jan. 21, 2022).

### E.        Counts III and V–X

The remaining counts will also be dismissed.

First, 42 U.S.C. § 242 (Count V) and 18 U.S.C. § 1001 (Count VI) are federal criminal statutes that do not provide private rights of action.

Second, the UNESCO Universal Declaration on Bioethics and Human Rights (Count VIII) is a non-binding declaration that also provides no private right of action.  See Sosa v. Alvarez–Machain, 542 U.S. 692, 734 (2004); Wolf v. Idaho State Bd. of Correction, No. 20-35600, 2021 WL 3721434, at *2 (9th Cir. Aug. 23, 2021).

Third, the Food, Drug & Cosmetic Act (FDCA) (Count VII) explicitly prohibits private enforcement of the statute, stating that "all such proceedings for the enforcement, or to restrain violations, of this [Act] shall be by and in the name of the United States."  21 U.S.C. § 337(a); PhotoMedex, Inc. v. Irwin, 601 F.3d 919, 924 (9th Cir. 2010); see also Talbott v. C.R. Bard, Inc., 865 F. Supp. 37, 39 (D. Mass. 1994), aff'd, 63 F.3d 25 (1st Cir. 1995) ("there is no private right of action to enforce the FDA's standards"); Lloyd, 570 F. Supp. 3d at 1173 (plaintiffs' challenges to mask mandates brought under 21 U.S.C. § 360bbb-3 are not cognizable claims under § 1983).  Moreover, because the FDCA does not create a private right of action, neither can regulations issued pursuant to FDCA, such as those contained in Title 21 of the Code of Federal Regulations (Count III).  Boata v. Pfizer, Inc., No. 10-cv-04390, 2010 WL 4878872, at *5 (S.D.N.Y. Dec. 1, 2010); cf. Nasuti v. U.S. Sec'y of State John Forbes Kerry, 137 F. Supp. 3d 132, 140 (D. Mass. 2016) (recognizing that OSHA and related regulations from the federal code do not contain private rights of action).

Fourth and finally, counts brought under Mass. Gen. Laws ch. 272, § 98 (Count IX) and Mass. Gen. Laws ch. 272, § 92A (Count X) will also be dismissed.  Defendants erroneously

argue that these are criminal statutes that do not provide private rights of actions, [ECF No. 22 at 17], but these are, in fact, Massachusetts' Public Accommodation Laws, see Brooks v. Martha's Vineyard Transit Auth., 433 F. Supp. 3d 65, 70 (D. Mass. 2020).  Nevertheless, "Massachusetts law requires that all of Plaintiffs' state-law discrimination claims be brought before the MCAD [Massachusetts Commission Against Discrimination] before a lawsuit may be filed." Quarterman v. City of Springfield, 716 F. Supp. 2d 67, 77 (D. Mass. 2009); Do Corp. v. Town of Stoughton, No. 13-cv-11726, 2013 WL 6383035, at *14 (D. Mass. Dec. 6, 2013).  Plaintiffs have not alleged that they have filed a complaint with the MCAD.  And even if Plaintiffs had complied with this requirement, Counts IX and X would still fail to state a claim for relief for reasons already discussed at length.  See Soltys v. Wellesley Country Club, No. 0000050, 2002 WL 31998398, at *6 (Mass. Super. Oct. 28, 2002) ("The plaintiff has three elements to establish for a *prima facie* case: (1) plaintiff is a member of a protected category under the statute, and (2) plaintiff was denied access to or restricted in the use of (3) a place of public accommodation.").

## IV.    CONCLUSION

Accordingly, Defendants' motion to dismiss, [ECF No. 21], is GRANTED.

**SO ORDERED.**

September 12, 2022                                      /s/ Allison D. Burroughs
                                                       ALLISON D. BURROUGHS
                                                       U.S. DISTRICT JUDGE